The opinion of the court was delivered by
Watkins, J.
The defendant is appellant from a verdict of a jury, and the judgment thereon based, in favor of the plaintiffs and appellees, decreeing (1) that what is denominated as Myrtle street in the town of New Arcadia is a public street of that town; (2) that there are obstructions now in said street which should be removed ; that the plaintiff and appellee, Mrs. Lucy Jackson, should have and recover of and from the defendant the sum of two hundí ed dollars, for the damages which were occasioned to her property by the increased volume of water which was thrown upon her property by the defendant, on account of the obstructions it was ordered to remove — all other claims for damages being rejected and disallowed by the jury.
In this court W. W. Armistead, plaintiff and appellee, appears and answers the appeal, and prays that the judgment appealed from be so amended as to order the defendant to remove the extension of their station and other improvements from Myrtle street in the town of New Arcadia; and further so as to award him the sum of three thousand one hundred and seventy-five dollars actual damages, and the additional sum of five thousand dollars punitive damages.
Mrs. Lucy Jackson also answers the appeal and prays a similar amendment as to the removal of the obstructions complai ed of, and for an increase of the amount of damages allowed to four thousand five hundred dollars actual damages up to the time of rendering judgment, and two dollars and fifty cents per day, for each additional day, until said obstructions shall have been removed out of Myrtle street, and in the further sum of five thousand dollars punitive damages.
While it is not conceded to be perfectly accurate in one or two particulars, and not exactly conforming to the maps and profiles that are introduced in evidence, we will extract from the brief of the defendant’s counsel an exhibit which pretty clearly exhibits the locus in quo and .discloses the matter in controversy between the litigants to be, that portion of ground which is designated as a par *1383 allelogram, through which the line of the defendant’s track is delineated:

The claim of the plaintiffs is that when the addition to the town named and styled New Arcadia was plotted the space which is designated on the sketch as Myrtle street was extended entirely through the town from north to south, and dedicated by the owner of the soil to public uses as a street or passage-way for the public, and *1384 which, on account of such dedication to public use, the defendant had no legal right to obstruct in any way.
On the other hand, that of the defendant is that its franchise and right of way entitled it to construct its depot, buildings and other works and improvements needful for the operation of its trains and the handling of its traffic across the space asserted to be so dedicated to public use, and that it is legally entitled to use and maintain the same.
With great elaboration and detail plaintiffs have stated their case to be, that recently, and without any right or authority, the defendant has built an extension to its depot, so as to extend it across Myrtle street, and thus obstruct its use by the public, and precipitates a large quantity of water upon the adjacent property of Mrs. Lucy Jackson.
They aver that the defendant is estopped from denying that Myrtle street crosses the railroad track, and that the ground on which the extension of the depot is built is a part of Myrtle street, for the following reasons, viz.:
1. That under an agreement between O. Q. Butler, P. P. Stubbs, P. Y. Dabney and the Vicksburg, Shreveport & Pacific Railroad Company, the town of New Arcadia was surveyed into lots and streets, one-half of said lots being on the north side of the defendant’s track and the other on the south side thereof; one-half of the lots being on the east side of Myrtle street and the other half of the lots being on the west side thereof, a map of the whole of which was made and filed by defendant.
2. That as a part of said agreement O. Q. Butler, in 1884, executed a deed donating to the defendant a right of way for its depot grounds, as indicated by the map; and likewise donated streets to the public, as same are actually staked off on the ground.
3. That the defendant built the Myrtle street crossing over the track, and that this crossing, and the stakes on each side, showed that Myrtle street continued uninterruptedly across the railroad of the defendant.
4. That in pursuance with said deed and dedication the defendant sold lots on Myrtle street, and especially lots one (1) and two (2) and four (4) and five (5) in block P of the plan of said town.
5. That the defendant itself treated the crossing of Myrtle las a public crossing continuously from 1884, the date of the dedication, *1385 to 1892, and that in the meanwhile all of its acts were such as to> create the belief in the mind of the public that this space had been dedicated to public use, and did nothing which was calculated to give notice to the public that it was not a public crossing.
6. That the town authorities worked Myrtle street and kept it in repair up to the railroad track on both sides, and cut ditches on each side of the street up to the track of the defendant, and it kept in repair the crossin? over the track, and dug'ditches on each side of the street under its track.
Then follows the general averment that Myrtle street was the principal street of the town, and prior to 1892 almost the entire trade of the town crossed the railroad track on Myrtle street crossing. That the obstruction to Myrtle street has caused great loss and damage to the plaintiffs in their respective businesses.
That by the obstruction which the defendant placed on Myrtle street, a large quantity of rain water had been diverted from its natural and legitimate course and precipitated upon the property and premises of the plaintiff, Mrs. Jackson, causing her great damage and injury.
The defence of the railroad company is a general denial, coupled with the special defence that the space of ground, as indicated upon the sketch, between Hazel street on the east and Maple street on the west, and designated as a parallelogram, through which its track is traced, is its private property, and that Myrtle street does not cross it.
That Myrtle street north terminates at this parallelogram on its north Side; and likewise it terminates at this parallelogram on the south side. That no part of the space which is included within the limits of said parallelogram has been at any time dedicated to public use, directly or by implication. That if it was so used by the public as a street, it was with the distinct understanding, as expressed by the defendant’s agent, that it was so used without the consent of the company, and that the public should acquire no right thereby. That the attempts of the town authorities to assume control of this space as a locus publieus was, at all times, protested against by the company’s agents, and their protest was effectual in preventing undue interference. That the company has always denied and resisted the right of the town to extend its authority so as to include the property in dispute.
*1386 With respect to the claim of Mrs. Jackson, the defendant’s answer is that the site of the town, at this particular locality, is on a steep inclination, on the side of which her property and improvements are erected, and that this declivity naturally drains the rain water rapidly toward the same. That the front of her property is immediately upon a natural drain and owes a servitude to the property above. And finally, that the particular culvert that is complained of now was built before the plaintiff (Mrs. Jackson) acquired her property, and that her purchase subjects her property to this servitude of drain.
The pleadings, and the proof at the trial as well, took a very wide range.
The evidence as to the’ original dedication is full and complete, and is shown by a formal notarial act by the owner of the soil, and was duly recorded in the recorder’s office on February 7, 1884.
The deed declares that O. Q. Butler is the lawful owner of a certain described tract of land, which is altogether unencumbered. That being desirous of extending the limits of the town, the act declares that he therewith “ submits a plat of the town of New Area-ilia, which he has caused to be made from an actual survey of eighty acres of his said land; besides including in said plat the whole of the balance of said tract above described, and portions of land adjacent thereto * * * all of which lies on the forty-eighth mile of the Western Extension of the Vicksburg, Shreveport & Pacific Railroad. And the said Butler further declares that, in consideration of the location by the said railroad company of its depot on his said land, and for other considerations received from the company, he has transferred, sold and assigned, and by this act hereby transfers, assigns and delivers, to the said railroad, the part of said plan indicated thereon as depot ground, and comprising four and thirty-seven one-hundredths acres, and the right of way, as actually shown, through the whole of said one hundred and sixty acres of land, to have and to hold the same, both depot grounds and right of way as plotted, surveyed and staked out on the land itself, unto the said railroad company and its assigns forever. And the said Butler further declared that he now attaches hereto said plat of the town of New Arcadia, hereby dedicating all the streets as marked thereon to the public use forever.”
This deed is signed by C. Q. Butler and F. Y. Dabney, O. E., *1387 superintendent of the defendant; and it is signed by Frank P. Stubbs and H. H. Russell, as attesting witnesses.
Accompanying this deed of dedication is the plat of the locus in quo, on which are endorsed these words, viz.:
“ Plan of the Town of New Arcadia.
“ On the
“ Vicksburg Shreveport & Pacific Railroad
“47 miles west of the Ouachita River.”
To identify the plat with the deed of dedication, same was paraphed by the notary who passed the act, ne varietur the 2d of February, 1884.
A further endorsement by the clerk and ex-officio recorder of the parish of'Bienville, placed on the plat, shows that same was “ filed for record on the 7th of February, 1894,” contemporaneously with the deed of dedication.
On this plat there is delineated the space of ground which was conveyed to the defendant.
Amongst others Myrtle street is delineated on the plat as an open space or way of eighty feet in width, and extending entirely through the town from north to south, at right angles with the open space which was conveyed to the defendant.
On either side of this space is an avenue of sixty feet in width, one of which is named “ R. R. Avenue North,” and the other is named “ R. R. Avenue South.”
This space extends east along the line of the railroad to the space indicated as Hazel street on the plat, and west to the space indicated as Maple street — Myrtle street being between the two and parallel therewith.
One noticeable feature of the plat is that the name “Myrtle street” is plainly written in the space bearing the name, the word “ Myrtle ” being written in that portion of'the space which is south of the railroad, and the word “ street” is written in that portion which is north of the railroad. The same is true of Elm street, Laurel street and Hazel street, which are east of Myrtle street, and also of Maple street, Beech street and Cherry street, which are west of Myrtle street.
Running parallel with the railroad there are Locust street, Chestnut street and Sycamore street, on the south side of the railroad; and First, Second, Third, Fourth and Fifth streets on the north side •of the railroad.
The foregoing is a complete analysis.of the dedication of the streets *1388 and space of the defendant in so far as the record is’concerned, leaving no doubt as to the locus, the intention to dedicate and the fact of dedication — the proof disclosing that all the streets and squares were staked and measured as indicated in the deed and plat.
Quite an important feature of this case is that the defendant had acquired and owned an interest in the property of this new town. Also that the defendant first built the crossing onjMyrtle street even before it had erected its depot buildings, as was stipulated in the deed of dedication, thus clearly evidencing its contemporaneous construction of its rights thereunder.
Without going fully into the details of the matter we will state, in synoptical form, the result of our investigation of the testimony found in the record.
That at the time of the dedication there was a survey made of the locus and stakes put down at the corner of each block, on either side of the railroad track. Nothing indicated to the eye of an observer that Myrtle street stopped at the defendant’s parallelogram, but, on the contrary, it appeared to extend across the track. At the crossing of the track Myrtle street had the same appearance as other streets of the town.
That not only was the crossing on Myrtle street established by the defendant, but it was worked and kept in repair by the company’s servants and employees up to 1892, when they undertook to establish an addition to its depot over the street crossing, and therewith blocked the passage-way.
During the series of years from 1884 to 1892 the authorities of the town of Arcadia worked and kept in repair the street on either side of defendant’s track, and caused a ditch to be dug on either side of the street, and caused the like ditches to be dug under the bed of the railroad, from north to south, entirely across the defendant’s parallelogram. That the defendant’s servants and employees dug the ditches underneath the bed of the railroad, and kept the same open and in repair.
That defendant built its depot, originally, on a line with the west side of Myrtle street, on both sides of its track, and also on a line with the business houses on the west side of said-street, above and below the railroad track. That the railroad crossing came right up to the east end of the defendant’s depot. That the depot was not *1389 built by thedefendant until six or eight months after the establishment of the street crossing.
That the warehouse which stands adjacent to the depot was built up to the east line of Myrtle street by the direction of defendant’s agent, the west end being placed on a line with the east side of Myrtle street, and on a line with the buildings on the east side of Myrtle street, above and below the railroad. That this warehouse having thus been established, the entire length of Myrtle street was left open, and free from obstruction. That from the time the depot was first built, in 1884, to the time of the erection of the addition thereto, in 1892, the crossing on Myrtle street was the principal railroad crossing in the town of Arcadia. That it was used as a public crossing, and Myrtle street was the main route of travel for people going in and out of the town. That this crossing was freely, openly and publicly used as part of York street from 1884 to 1892, without question or dispute. That during that interval of time properties and town lots in the vicinity of Myrtle street were bought and sold with reference to the uses and conveyances of this as a public crossing of the defendant’s track, and common for the purposes of the businesses and trafile of the public, and that on that account higher prices were demanded and obtained.
That when, in 1892, the defendant proposed to extend its depot east across Myrtle street, the town council made a formal protest against it, using the following language in its resolution, viz.:
“We beg'leave to say that we approve the plan except the occupation of the crossing east of the present depot. The crossing named is a crossing which has been declared as such by action of the town council, and it is the main thoroughfare of the town. Hence, to allow said crossing stopped up would materially militate against the interest of the whole community, both town and country. Therefore, we respectfully ask that the extension be made on the west end of present depot, or that the present depot be moved west sufficiently to admit of the addition being made to the east end without obstructing the erossiug above named.”
^Reference to the plot of the town discloses that the defendant’s right of way, at the west end of its former depot, at its intersection with Myrtle street, is of one hundred feet in width and of four hundred in length, thus affording ample room for the proposed addition to its depot at that point, without detriment to the public interest *1390 by obstructing the Myrtle street crossing, or serious inconvenience to the defendant’s business.
The foregoing protest of the town authorities being altogether disregarded by the defendant, the council adopted a formal ordinance instructing and requiring the town marshal to wait upon defendant’s agent and representative and notify him that they “ would not submit to the closing, or in any obstructing the passage by foot or vehicle of the public crossing, immediately east of the defendant’s depot and known as Myrtle street,” etc.
This protest was likewise disregarded by the defendant, and Myrtle street was completely obstructed by the establishment of an addition to its depot across the space which had been dedicated as a public street.
From a ca eful perusal of the record, and as fully illustrated by the foregoing excerpts from the evidence, it is our deliberate opinion that the dedication was complete and perfect, and that it has been so interpreted by the acts and conduct of the defendant daring a series of years, and on the faith of which the public has acted and with reference to which private contracts have been made, and on which property rights have been founded.
In this situation the defendant had not even the color of legal right to arbitrarily resume possession, notwithstanding it was owner of the soil.
The subordination of the space indicated on the plat as Myrtle street was perfect and complete, and the public is entitled to be restored to its use.
In so far as the increased allowance of damages are concerned we regard them as too speculative and remote to base a judgment upon. Schleider vs. Deilman, 44 An. 462. We note the fact as one worthy of consideration that it was the defendant who moved for a new trial in the lower court; and that plaintiffs seemed to have acquiesced in its refusal without argument. But we think the plaintiffs are entitled to an amendment requiring defendant to remove the obstructions which are complained of.
It is therefore ordered and decreed that the judgment appealed from be so amended as to require the defendant to demolish and remove, at its own cost, the obstructions-which are complained of, and that, as thus amended, the judgment be affirmed.