## CITY OF ATLANTA v. TEXAS & PACIFIC RAILWAY COMPANY.

### Decided May 27, 1909.

**1.—Street—Dedication—Map—Construction.**

A map or plot is a written instrument and its construction is for the court unless there is an ambiguity which renders it necessary to resort to circumstances attending its making in order to arrive at the real intent of the parties.

**2.—Same—Evidence of Intent.**

In a case where a town was laid off by a railway company and a map filed showing its streets and blocks with their relation to the property reserved by the railway for its own use, evidence of the circumstances attending such dedication of streets and subsequent conduct of the company in relation thereto considered and held to disclose no act or declaration on the part of defendant company raising any question of fact as to the intent to be deduced from the filing of such map, and leaving its construction one for the court.

**3.—Same—Case Stated.**

A railway company laid out and mapped streets and blocks for a town on property owned by it at a station which it established. The map showed a strip 200 feet wide along its tracks marked "reserved for railway purposes" and enclosed by a marked line. Streets were mapped on either side of and running parallel with this reservation. At right angles with the reservation C. street was represented by bounding lines running across such reservation at the depot. T. street and others were represented by lines terminating at the marked boundary of the railway reservation. Held, that such map would not evidence any intent to dedicate a crossing of T. street over the reservation and tracks of the railway company.

**4.—Dedication by Map—Intent—Subsequent Conduct.**

The intent as to the dedication to the public of a certain street by a map filed by the owner of the property is not affected by his subsequent conduct in opening and recognizing another street similarly represented upon the map.

Appeal from the District Court of Cass County. Tried below before Hon. P. A. Turner.

*O'Neal & Allday,* for appellant.—On the questions of dedication of a street and the acceptance of the same, where there is sufficient evidence to support a verdict in favor of the party introducing it, the issues ought to be submitted to the jury. Harpold v. Moss, 101 Texas, 540; Parisa v. City of Dallas, 83 Texas, 253; Galveston, H. & S. A. Ry. Co. v. Baudat, 18 Texas Civ. App., 595; 13 Cyc., p. 485; Elliott, Roads and Streets, 157; 9 Am. & Eng. Ency. of Law (2d ed.), 52.

The sale and conveyance of lots in a town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places indicated as such upon the plan shall be forever open to the use of the public free from all claims or interference of the proprietor inconsistent with such use. City of Corsicana v. Zorn, 97 Texas, 317; City of Corsicana v. Anderson, 33 Texas Civ. App., 596; City of Tyler v. Boyette, 43 Texas Civ. App., 573; Oklahoma C. & T. Ry. Co. v. Dunham, 39 Texas Civ. App., 575; Temple v. Sanborn, 41 Texas Civ. App., 65; Elliott on Roads and Streets, 117; Armistead v. Railway Co., 47 La. Ann., 1381; St. Louis & S. F. Ry. Co. v. Gordon, 157 Mo., 71; City of California v. Howard, 78 Mo., 88;

City of Noblesville v. Railway Co., 130 Ind., 1; Northern Pac. Ry. Co. v. Spokane, 56 Fed., 915.

*W. T. Armistead* and *O'Neal & Figures* (*W. L. Hall,* of counsel), for appellee.—The city is not entitled to the remedy provided for in said article 549c, but its proper remedy was under article 549b, for a condemnation of such right of way.

The court did not err in instructing a verdict for appellee in this cause because there is neither allegation or proof sufficient in the record to show that there ever was a public street crossing put in by the railway company, or the city, crossing the appellee railway company's roadbed and right of way at Thomas Street. Art. 549c, Sayles' Civ. Stats., 1897; art. 549b, Sayles' Civ. Stats., 1897; Heilbron v. St. Louis S. W. Ry. Co., 113 S. W., 610, and cases there cited.

Said map and plat show that said Thomas Street was never platted or laid out to cross said railway company's right of way and roadbed, but that on the west it only run to an intersection with West Street, which is a street that parallels the railway on the west side and runs north and south, and to where said Thomas Street intersects East Street, which is a street that parallels said railway on the east side, and runs north and south, and said map and plat so made and recorded by the railway company, and afterwards adopted by the city, shows conclusively that the railway company never intended that said Thomas Street should cross its right of way. Heilbron v. St. Louis S. W. Ry. Co., 113 S. W., 610; Ramthun v. Halfman, 58 Texas, 551; Worthington v. Wade, 82 Texas, 28.

As there was not a scintilla of evidence in this case to show that the city had acquired an easement or right to a crossing over appellee's right of way and roadbed at Thomas Street by prescription or limitation, it was not error for the court to instruct a verdict for the railway company in this case. Heilbron v. St. Louis S. W. Ry. Co., 113 S. W., 610; Ramthun v. Halfman, 58 Texas, 551; Worthington v. Wade, 82 Texas, 28; Gilder v. City of Brenham, 67 Texas, 346; Stewart v. Frink, 94 N. C., 487, 55 Am. Rep., 618; Jones on Easements, sec. 282; Elliott on Roads and Streets, sec. 130.

HODGES, ASSOCIATE JUSTICE.—This is a suit instituted by the appellant against the appellee to recover penalties provided for in article 549c of the Revised Civil Statutes, and to compel the appellee to repair and keep in proper condition for use a portion of its roadbed and right of way which is crossed by Thomas Street, alleged to be one of the public streets of the City of Atlanta. The petition alleges that the City of Atlanta was incorporated many years ago under the general laws of Texas; that the appellee railway company owns a right of way about 200 feet wide running practically north and south through said city; that in 1874 the company owned 111 acres of land in Cass County, upon which it laid out and established the town of Atlanta; that the tract was laid off into blocks, lots, streets and alleys, and among the streets that were established by the defendant company was Thomas Street; that the town was laid off on both sides of the railway track, the streets running east and west and crossing the rail-

way; that Thomas Street was laid off running nearly due east and west and crossing the railway track of the defendant company just south of the depot; that the railway company made a map of the town, showing the streets, blocks and alleys, and had the same recorded in the office of the county clerk of Cass County. It is further alleged that since 1876 Atlanta has been an incorporated city having a mayor, city council and other officers provided for by law; that it has established and adopted the streets which had been laid off and plotted by the railway company, and from that time up to the present Thomas Street has been a public street, and was known and recognized as such by the public generally and by both the plaintiff and the defendant in the suit; that there were many residences, some churches and business establishments situated on Thomas Street, and it was a thoroughfare much used by the public; that for more than thirty years many persons, within the knowledge of the defendant company, had daily crossed the railway track on Thomas Street, to and from both sides of the railway right of way; that the said street had been worked by the City of Atlanta for more than thirty years on both sides of the railway track. It further alleges that the appellee owned the lots in that part of said city laid out upon the map, and had sold them according to the map to various parties for residence and business property; that all the parties who had purchased lots believed that Thomas Street crossed the railway track and extended on both sides, as shown by the map. It charges that the railway company for the last year and up to the present time has neglected and refused to keep that part of its roadbed over and across which Thomas Street passes in proper condition for the use of the traveling public; that the crossing is now and has been continuously for the last twelve months in such condition that it was impossible for the public to use that part of the street. It is further alleged that in December, 1906, the city council of Atlanta ordered the city marshal to have the defendant place crossings over its said road in a passable condition, and on the 12th day of December of that year the said city marshal served a written notice upon the section foreman at that place notifying him under the provisions of the statute to put the crossing in proper condition for use of the traveling public. The petition further charges that notwithstanding the condition of the right of way crossing and the notice that had been given to the section foreman, the company had failed and refused to place and keep in repair that part of its right of way over which Thomas Street crosses. It concludes with a prayer for judgment requiring the defendant company to place and keep the crossing in repair, and for penalties for $25 a week for each week since the service of the notice. The railway company answered by general demurrer and by general denial. It specially denied that it had ever made any dedication for public use of that portion of its right of way shown to be between the two divisions of Thomas Street; that this had been reserved in the map referred to, and by the company generally, for railway purposes. And it also alleges other facts not necessary here to repeat. At the conclusion of the testimony the trial court instructed a verdict in favor of the defendant company, from which this appeal is prosecuted.

The controlling issue in this case is whether the point where it is claimed that Thomas Street crosses the right of way of the railway company is a public crossing within the meaning of article 549c of the Revised Civil Statutes. That article provides as follows: "It shall be the duty of every railroad company in this State to place and keep that portion of its roadbed and right of way over or across which any public street of any incorporated town or village may run in proper condition for the use of the traveling public, and in case of its failure to do so for thirty days after written notice given to the section boss of the section where such work or repairs are needed . . . it shall be liable to a penalty of twenty-five dollars for each and every week," etc. A public street within the meaning of that act is one laid out and established by the municipality, or one in which the public, by some of the methods known to law, have acquired a public easement.

As supporting its contention that Thomas Street is a public street continuously throughout its entire length, and as such passes over and across the right of way of the railway company, the appellant relies upon the assumption of a dedication by the railway company. It is not claimed that the City of Atlanta has ever taken any official action by which to acquire an easement on Thomas Street as a public highway over the railway right of way; neither is it claimed that the city or any of the property owners have a prescriptive right to use the crossing over the right of way of the railway company between the two sections of Thomas Street; but it is insisted that the railway company, by plotting and mapping the land upon which that portion of the City of Atlanta is located, thereby dedicated a continuous highway known as Thomas Street, extending across the right of way at that point. The map referred to and here relied upon was made in about 1874, and was placed of record in the office of the county clerk of Cass County. The following is a substantial copy of that portion material to the decision of this case:

It will be observed that Thomas Street, as well as others running east and west as outlined upon this map, is divided by the railway right of way into two sections. The question is, Does this map disclose a purpose on the part of the railway company to dedicate to the public use Thomas Street as a highway over and across its right of way, or does it indicate an intent to terminate Thomas Street on each side of the right of way and to reserve for railway purposes what might otherwise become a crossing between the two sections of that street? A map or plot, such as that here in evidence, is a written instrument, and its construction is for the court unless there is an ambiguity which renders it necessary to resort to circumstances attending its making in order to arrive at the real intent of the parties. Florida East Coast Ry. Co. v. Worley, 38 So., 618. Aside from the plotting shown on the map there is nothing to evidence an intent on the part of the appellee to dedicate this crossing between the two sections of Thomas Street to the public as a highway. The record does not disclose any act or declaration on the part of the agents or officials of the railway company showing any such purpose, or anything beyond the mere making and recording of the map. The land at this point appears to have been unenclosed, and there is no evidence as to any

stakes or marks having been established upon the ground. People occasionally crossed at what might be termed the Thomas Street crossing, probably just as they would at any other convenient point upon an unenclosed right of way of the railway company. The company never at any time put in any crossing or showed any disposition to

recognize the Thomas Street crossing as a public crossing. The city authorities never worked Thomas Street except up to the line of the reservation on each side of the right of way. At that point there were other streets running at right angles with Thomas Street and proceeding north to Common Street, which is shown by the evidence to have had a good crossing kept up for years. It is true that some of the witnesses testified that the Thomas Street crossing was recognized by the railway company and the public generally as a public crossing; but when this testimony is sifted it appears simply as the conclusions of the witnesses, and there are no facts stated upon which it could be predicated. It is shown that many years ago a sawmill was located on Thomas Street not far from the railway, and there is evidence in the case that some traveling was done over this crossing while the sawmill was there; but it is not shown that the railway company put in any crossing or did anything in recognition of this use as a public right, or that it encouraged the use in any manner whatever. It is also shown that since the sawmill ceased to operate the crossing had been neglected and its use discontinued except occasionally by persons in empty vehicles, or pedestrians who found it convenient to use that way in going from one part of the town to another. It is further shown that the crossing, if such it might be termed, has for years received no attention from either the railway company or the city authorities. We think the testimony justifies the further conclusion that Thomas Street is some distance from the business portion of the City of Atlanta, toward the southern extremity.

It follows that unless there is a dedication shown by the map offered in evidence the court properly directed a verdict in favor of the appellee. In order to constitute a dedication of private property to public use it must clearly appear that the owner intended to absolutely and irrevocably set apart the land for public use. Heilbron v. St. Louis S. W. Ry. Co., 52 Texas Civ. App., 575; Ramthun v. Halfman, 58 Texas, 551; Worthington v. Wade, 82 Texas, 28, 17 S. W., 520. An inspection of the map will show that the lines are drawn on both sides of the railway track and parallel with it from what is designated as Common Street, south to the extreme limits of the plot. On the west side from Common Street south for a considerable distance, the space between the track and the marked line is indicated as 75 feet wide, while on the east side it is 125 feet wide. The lines at Common Street are so drawn as to clearly indicate an intention to make that street a continuous thoroughfare extending over and across the right of way east and west, but this delineation does not obtain at those points which would otherwise form the connection of the other streets, including Thomas. The difference between the delineations on the map as to Common Street and the other streets is not without some material significance, and this fact can not be disregarded by a court in construing the map as a whole. The principle applicable to written instruments which forbids that any part to which meaning and effect can reasonably be ascribed should be treated as meaningless, is equally applicable to maps relied upon as showing a dedication. City of Duluth v. St. Paul & D. Ry. Co., 49 Minn., 201, 51 N. W., 1152; City of Noblesville v. Lake E. & W. Ry. Co., 130 Ind., 1, 29 N. E., 484.

If the open lines at Common Street indicated an intent to dedicate a continuous street, the closed space at what would otherwise be the junction points of the other streets evidently evinced the absence of any such an intention on the part of the railway company as to the latter streets. It also appears from the map that the railway company intended to reserve this strip enclosed between the lines on the east and west sides of its track, for railway purposes. This is made evident by the words "Reserved for railway purposes," written thereon. The reservation mentioned evidently referred to the space included between the lines on the map, and to no other. The fact that the words extend across Common Street into the space north of that highway has no special significance. The reservation was manifestly made subject to the conditions created by the map. If Common Street was by the map dedicated as a continuous thoroughfare extending across the railway right of way, then the reservation was subject to the use of that street by the public as a highway. The location of the depot immediately north of and adjacent to Common Street rather indicates that this highway was intended for use in approaching the depot, as well as for crossing from one side of the town to the other. We can not construe this reservation, as insisted by the appellant in his argument, as being subordinate to the use of all the various street crossings by the public. We can not substitute streets where none are shown. We must accept the plot as made by the author, and construe it accordingly. Had the railway company entertained the fixed intention not to have these streets cross its track or right of way, we know of no better method of showing that intention on the plot than that which was adopted in this case.

Counsel for appellant have called our attention to some authorities upon which they rely with much confidence as holding a view contrary to that which we here express. The case of St. Louis & S. F. Ry. Co. v. Gordon, 57 S. W., 742, a Missouri case, is in some respects similar to the one at bar. There the question was as to whether or not there had been a dedication by map of what was known as Washington Avenue in the town of Conway. It was shown that the railway divided the town into two parts, and that the map delineating the streets made no difference as to any of them as indicating whether or not they crossed the right of way of the railway company. The court, in the course of the opinion, said: "There is no indication on the plot of any intention that these streets shall not be opened across the tracks, but the plot clearly shows a contrary intention." A copy of the plot is not given, and we are unable to determine whether it differs from the one in this case. It would seem, however, from the language quoted, that the plot was entirely consistent with the theory that the streets were intended to cross the railway right of way. It was also argued that this construction became necessary, or else the town plot would present the situation of having divided the town into two parts, with no way of passing from one part to the other. The difference between that case and the one at bar is that here the railway company has provided a large thoroughfare, Common Street, by which the people on one side of the track can pass over to the other, and has shown

an evident intention to limit its dedication of crossings to that highway.

The case of Armstead v. Vicksburg, S. & P. Ry. Co., a Louisiana case reported in 47 La. Ann., 1381, 17 So. Rep., 888, is in some respects also similar to the case at bar. The question there involved was whether a street called Myrtle Street was intended by the plot to cross over the track of the railway company. The difference, however, between the facts of that case and this is that the railway company itself put in and maintained for many years a crossing on Myrtle Street, and this was held to be sufficient to constitute a dedication of Myrtle Street crossing as a public highway.

In neither of the above cases was it made to appear that the railway company had made any special reservation of that portion of its right of way enclosed within the marked lines on the map. It is insisted by counsel for appellant, in an able argument, that this reservation does not signify the exclusion of a crossing right of way for the streets running to the railway reservation on each side; that an easement for those streets as public highways would not conflict with the use by the railway company of its property for private purposes. There is much force in this contention. However, we are not called upon to consider what the railway company might have done without interfering with its own use of its property, but what it did do. When it drew the map showing this space enclosed by well-defined lines, evidently intended as boundaries so marked as to exclude the inference that it was to be entered for any purpose except railway use, that intent was accentuated by the use of the words "Reserved for railway purposes," written thereon. We can therefore only give effect to what must be regarded as the clearly expressed intention of the company in making and recording the map as it did, not as it might have done.

It is also insisted that the fact that Hiram Street, which is delineated on the map much in the same manner as is Thomas Street, is now used as a public highway by permission of the railway company, has an important bearing in construing this map. The railway company had the right, after constructing the map as it did, by its own conduct to dedicate to public use Hiram Street. This could have been done in many different ways showing that intention. The fact that after making and recording the map the railway company did maintain a crossing on Hiram Street, and did permit the public to use it constantly as a highway over and across its right of way, does not affect the delineations on that instrument or detract from its clearly expressed purposes. We must regard the conditions as we find them, not as they subsequently became by an alteration of the railway company's policy in regard to those streets.

We do not think the map is sufficient to show a dedication of a crossing of Thomas Street as one of the public crossings of the City of Atlanta over the railway right of way; neither do we think there is sufficient testimony to find that the railway company dedicated it otherwise. The court, we think, properly instructed a verdict in favor of the defendant in the suit, and the judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.