SUMMIT PLACE CO. v. TERRELL.
(No. 5978.)

(Court of Civil Appeals of Texas. San Antonio. July 1, 1918. On Motion for Rehearing, Nov. 6, 1918.)

1. APPEAL AND ERROR ☞524—MAP NOT ATTACHED TO FINDING—CONSIDERATION.

Although record fails to show that map was attached to findings of fact, where there is a complete map among papers which were attached to statement of facts, and both parties rely on such map, it will be considered by court on appeal, there being no dispute concerning fact that it is a part of statement of facts.

2. EXCHANGE OF PROPERTY ☞3(1) — FALSE REPRESENTATIONS—EVIDENCE.

Where plaintiff received title to a lot 114 feet wide, representation of defendant with whom he exchanged property, that lot had 114 feet front, would be literally true, although the 114 feet included 16 feet taken up by sidewalk and private parking, and judgment for plaintiff cannot be sustained on the ground that fraud was perpetrated by means of such representation.

3. EXCHANGE OF PROPERTY ☞4—CONTRACT—CONSTRUCTION.

Where plaintiff exchanged property with defendant for lot represented by defendant to be 114 feet wide, but which plaintiff alleged was only 98 feet wide, *held* that deed, when construed as a whole, vested in plaintiff the fee to sidewalk space and title to private parking, so that lot was 114 feet wide as represented.

4. DEDICATION ☞48—SALE OF LOT—RIGHTS OF GRANTEE.

Previous dedication of sidewalk, by map duly recorded, and by reference made a part of deed, precludes grantee from using sidewalk space for building purposes.

5. DEEDS ☞111—INSTRUCTION—CONFLICTING CLAUSES.

If deed contains conflicting clauses, which cannot be reconciled, the clause will be retained which gives the greatest estate, and the clause in conflict therewith rejected.

6. DEEDS ☞90—AMBIGUITY—CONSTRUCTION IN FAVOR OF GRANTEE.

Any ambiguity must be resolved in favor of the grantee.

7. BOUNDARIES ☞20(1)—STREETS—ABUTTING OWNERS.

The owner of a lot abutting on a street acquires the fee to the middle of the street.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

## On Motion for Rehearing.

**8. DEDICATION ⬅18(1)—STREETS.**

Deed expressly stating that all streets and alleys are dedicated to the public generally, and especially to the city, that red lines on map indicate public sidewalks, four feet wide, and that green shadings indicate private parking between the sidewalk and curbing, would constitute a dedication to the public of an easement in sidewalk space, but not in strip designated private parking.

**9. DEDICATION ⬅19(4)—FILING MAP—EFFECT.**

If intention of maker of map was to include sidewalk space and private parking space as portions of corner lots, such intention was adopted by the owner when it recorded the map.

Error from District Court, Bexar County; W. F. Ezell, Judge.

Supplemental motion for rehearing by plaintiff and motion for rehearing by defendant. Defendant's motion overruled, and plaintiff's motion granted and judgment reversed. For former opinion, see 203 S. W. 1110.

McAskill, Simmang & Mauermann and Leonard Brown, all of San Antonio, for plaintiff in error.

John W. Turner and Barrett & Barrett, all of San Antonio, for defendant in error.

MOURSUND, J. [1] While the court recited in his findings of fact that a copy of a portion of the map of Summit Place addition, and of the instrument dedicating streets in said addition, is attached to the findings of fact, the record fails to show that this was done; but there is a complete map of said addition among the papers which had been attached to the statement of facts and became detached in some way. This map is relied upon in the briefs of both parties, and, there being no dispute concerning the fact that it is a part of the statement of facts, we conclude that we erred in refusing to consider it when we originally decided this case (203 S. W. 1110).

[2] The only representation pleaded and relied upon is that plaintiff in error represented lot 6, block 7, in Summit Place addition, as containing 114 feet front on Queensborough Court. Plaintiff in error contends that the lot in question does in fact contain 114 feet, and therefore the representation made by Roos was in fact true. In his brief defendant in error says:

"Just how it can be contended that defendant in error got 114 feet is something more than we can conjecture; but, if he did, this case should be reversed and rendered."

The question, therefore, is, did defendant in error by his deed obtain title to a lot containing 114 feet? The deed describes the lot as lot No. 6, block 7, as shown by the map of Summit Place. There is no statement as to the size of the lot. The map shows that the lot lies west of Howard street, and fronts on Queensborough Court. The black line between lots 5 and 6 is marked "154.17," and the line at the rear of the lot is marked "114.0." These are the only figures appearing with reference to such lot. There is a green shaded line along the front and the side on Howard street, and at the corner red lines cross each other just inside the green shading, and run out to the street. The map has indorsed on it a duly acknowledged dedication of streets and alleys in Summit Place, executed by the Summit Place Company, through its president, J. O. Terrell, and attested by defendant in error, who at that time was secretary of the company. That instrument contains the following statement:

"The red lines on map indicate public sidewalks 4 feet wide, and the green shadings indicate private parking between the public sidewalk and the curbing along the streets."

The right was reserved therein by the company for three years to construct such sidewalks and curbings as it might desire. The deed contains the following provision:

"That such residence shall be as much as two stories in height, and cost and be fairly worth not less than *ten* thousand dollars ($8,000.00), and no part thereof, except the steps descending from the gallery or building, shall be located nearer than fifty (50) feet from the curb line on the front of said premises, nor nearer than ten (10) feet from the side lines of said premises, and shall face the front line of said premises, to wit, on Queensborough Court; that no outbuildings or private stables, or any part thereof, shall be erected, placed, or permitted on said premises at a distance of more than fifty (50) feet from the rear line of said premises, and not less than forty feet from any side street; that no fences or copings whatsoever more than three (3) feet in height shall be erected, placed, or permitted upon said premises at a distance nearer than seventy-five (75) feet from the front line of said premises, and not nearer than forty feet from any side street, and no fence or coping shall be erected on any lot outside of the proposed sidewalks as shown by the recorded plat of said addition, and provided, further, that the four-foot strip designated on the map of said addition as a sidewalk is dedicated to the public for such purposes, and the Summit Place Company reserves the right to build a sidewalk along said strip as provided in said map."

Defendant in error admitted that, if the sidewalk and private parking be included as a part of the lot, it contains 114 feet. It is contended that the map shows that measurements were to be made from the sidewalk. This contention is based on the fact that the lot across Queensborough Court from lot 6 has its back line marked "114," and the green space marked in small figures "12,"

such mark being near the front of the lot. From this is deduced the theory that the 114 does not include the 12; but upon what can such theory rest? The "114" is written much larger than the "12," and it is just as plausible that it relates to the entire line upon which it is placed as that it was only intended to mark part of it, and that the "12" was placed for the purpose of showing how much of the 114 was taken up by private parking. The width of the sidewalk is not delineated on the map, nor is the space reserved therefor marked at the rear end of the lot; and therefore the figures 114, even according to defendant in error's theory, would include the sidewalk, for the line is unbroken until it intersects the green shading. If the figures along the lines exclude the green shading, then the figures indicating the depth of the various lots also are arrived at by measuring only to the private parking. Attention is also called to the fact that the figures "114.0" appear inside of the lot; but as every figure relating to the lots appears inside of them, and none on the outside, no theory can be deduced that such figures were intended to only mark the distance to sidewalks or private parking. When the map, which is fairly accurately drawn, is considered carefully, and distances represented by the lines of the various lots are compared, it is found that lot 6 and the lot opposite it, which has the same front, must run to the curb in order to get the distance of 114 feet. This is easily ascertainable by comparing the front lines of the 100 feet inside lots and lot 3, block 1, which has a front of 98 feet, with the lines on said lot 6 and the lot opposite it, measuring such lines west from the red sidewalk line instead of the curb. Of course, if lot 6 extends only to the sidewalk, the other corner lots also extend to the sidewalk. If defendant in error's theory that measurements are to be made from the sidewalk be taken as correct, we are confronted with the fact that corner lots, whose rear lines are marked 100 feet, are mapped on a different scale from the inside lots, whose rear line is also marked 100 feet, and, furthermore, that said lot 6, conveyed to defendant in error by plaintiff in error, is mapped on a different scale from the other lots in the same block. While there are a few inaccuracies in the map, when it is taken as a whole a comparison of lines shows that the corner lot distances must be taken from the curb in order to credit the drawer of the map with using the same scale in mapping the entire addition.

[3] Defendant in error seeks to deduce from one of the restrictions in the deed an intent to make the sidewalk the boundary of lot No. 6. The provision is to the effect that no building shall be placed nearer than 10 feet from the side lines. If the side line of No. 6 was the curb line, the building could be placed on ground designated for sidewalk; therefore it is contended that by side line was meant the line of the sidewalk, and that lot 6 would be bounded by the sidewalk. We do not believe this provision could be given the effect of limiting lot 6 to 98 feet, and thus reserving to the grantor the fee in the space for sidewalk and private parking. There is nothing in the deed showing a separate conveyance of such parcels. They are either conveyed as part of lot 6 or not at all. The lot conveyed is referred to in all of the building restrictions as the "premises," and the "curb line on the front of said premises" is mentioned, and it is provided that no fence or coping shall be erected on any lot outside of the proposed sidewalks, as shown by the recorded plat of said addition. These recitals indicate clearly that the premises conveyed, namely, lot 6, block 7, extends to the curb. It is true that if the "side lines" of said premises, as used by the drawer of the deed, be assumed to be the curb lines, a building could be placed so as to extend two feet over the sidewalk. An intention to permit that to be done would be in direct conflict with the intent expressed to reserve for the benefit of the public as a sidewalk the space designated for that purpose, and, as the grantor would naturally not undertake to grant any rights of which it had previously divested itself, it is reasonable that the real intent was to require the building to be erected not less than 10 feet from the sidewalk line, as to corner lots.

[4] The previous dedication, duly recorded, of the sidewalk space made part of the map, and therefore, by reference, a part of the deed, precludes the grantee from using the sidewalk space for building purposes.

[5] If the deed be viewed as having conflicting clauses, which cannot be reconciled, the clause will be retained which gives the greatest estate, and the clause in conflict therewith will be rejected. The deed, as a whole, would be construed to vest in the grantee the fee to the sidewalk space and the title to the private parking, with the restriction that he is not permitted to place any fences thereon.

[6] Any ambiguity must be resolved in favor of the grantee, and, when the deed is considered as a whole, it is apparent that the lot conveyed includes the sidewalk space and the private parking space. If this was a suit involving title to said strips of land, the grantor could not maintain a contention that the same were not parts of the lot conveyed by it. The deed shows by several recitals that such strips are part of the premises conveyed, and it cannot be contended that such rights as the grantee has therein passed to him by reason of his purchase of property abutting thereon.

[7] The owner of a lot abutting on a street acquires the fee to the middle of the street; but it is hardly probable that the owner of a lot, if specifically limited to the sidewalk

as .his line, would own the fee in the land used for sidewalk, and that designated merely as "private parking," and then the fee to the middle of the street. We conclude that the court erred in holding that lot 6 has a frontage on Queensborough Court of only 98 feet. The representation alleged to have been made by appellant is literally true. It follows that no judgment can be sustained on the ground that fraud was perpetrated by means of such representation.

The conclusion announced by us is derived, as a matter of law, from the deed and the map made part thereof. If such instruments left the intent vague as to what was conveyed, the verbal testimony of those who were instrumental in laying out and platting the addition supports the construction adopted by us. Even the defendant in error believes that he became entitled under the deed to some kind of estate or rights in the private parking space. His theory was that the sidewalk and private parking was not a part of the lot, and he expressed the opinion that he did not get 114 feet, but also stated that if he did he.could not use it. He also said:

"As to making no claim to it, I wouldn't want to allow anybody to build a negro shanty there or anything of that kind; I think it belongs to the public. I think probably I own to the middle of the street, but I couldn't utilize it; couldn't handle it."

In speaking of sales of lots by him in the same addition, defendant in error said:

"In these deeds I sold by the lot and specified from the curb measurements. I can't recall if in these deeds I made I sold from the curb, but I am sure I sold this corner lot at one time; that I explained how it was. I explained that there were sixteen feet there in the curb and sidewalk, and explained how it was measured."

There was no allegation that Roos represented the lot as containing 114 feet, exclusive of sidewalk space and private parking, nor did defendant in error testify to any such representation. Defendant in error did not allege that Roos knew appellee was laboring under the mistaken belief that the lot contained 114 feet, measuring from the sidewalk, and that he fraudulently concealed from appellee the fact that such belief was erroneous. Defendant in error made a mistake in his construction of what Roos meant by his statement,. and would not have taken lot 6 at $60 per foot had he known that he was expected to allow for the 16 feet included in sidewalk and private parking; but this is not a case based on any allegation of mistake, but a suit for damages for fraud, and, as the representation relied upon is shown as a matter of law to have been literally true, the court erred in his conclusions of fact and judgment.

We do not wish to be understood as approving the theory as to measure of damages upon which this case was tried.

The order overruling plaintiff in error's motion for rehearing is set aside, and a rehearing. granted upon said motion and the supplemental motion for rehearing; the judgment of affirmance heretofore entered in this cause is set aside, and judgment rendered in lieu thereof that the defendant in error take nothing by his suit, but that he recover all costs incurred in the trial court up to the trial of the cause, it not being clear when the taxes were paid, and that plaintiff in error recover of defendant in error the remainder of the costs incurred in the trial court as well as the costs of appeal.

## On Motion for Rehearing.

The defendant in error's motion for rehearing presents the contention, in substance, that by virtue of the acts of Summit Place Company, in making and filing for record the map, accompanied by the deed of dedication, the space designated for private parking and sidewalk became portions of the street, and that the right of the purchaser of lot 6 to use such sidewalk space and private parking space would be only such right as he has in common with the public. Defendant in error does not appear to be entirely clear as to whether the parcel is a public park or part of the street. While the contention is urged, and frequently repeated, that it is a part of the street, he relies on the cases wherein it has been held that to lay out a town and designate a plat as "Park" will be held to constitute a dedication of such space as a public park, in the absence of anything to show a contrary intention. If this parcel was dedicated to the public as a park, the owner of every lot in Summit Place addition will be confronted with problems relating to ingress and egress and the control of what is to be planted in front of his residence. "In order to constitute a dedication of private property to public use, it must clearly appear that the owner intended- to absolutely and irrevocably set apart the land for public use." Atlanta v. Railway, 56 Tex. Civ. App. 226, 120 S. W. 923.

[8] The deed of dedication expressly states that all streets and alleys are thereby dedicated to the public generally, and especially to the city of San Antonio, subject to certain conditions therein named, one of which relates to poles, wires, sewers, water and gas mains, all of which are to be placed in the alleys. After the express dedication of the streets and alleys, appears the statement: "The red lines on map indicate public sidewalks, four feet wide, and the green shadings indicate private parking between the public sidewalk and the curbing along the streets." This statement does not constitute any express dedication, such as was made with respect to the streets and alleys, but the mere designation of the sidewalk space as intended for public sidewalks. would doubtless be sufficient, and it has so been considered ·by

us, to constitute a dedication to the public of an easement in such space for sidewalk. The designation of a strip as "private parking" cannot be considered on the same footing as to lay out a town and mark a square or other parcel as "Park," in which case the intention would ordinarily be disclosed to make it a public park. We know of no clearer way to negative the idea that parking is to be public parking than to designate it as private parking.

We have heretofore pointed out that the maker of the map, in indicating the width of lot 6 at 114 feet, took as parts of said lot the sidewalk space and the private parking space. This is proved conclusively by the fact that, unless we attribute such intention to the maker of the map, we must attribute to him the making of a map upon which the corner lots are laid out upon a different scale from the inside lots.

[9] Of course, if the intention of the maker of the map was to include the sidewalk space and the private parking space as portions of the corner lots, such intention was adopted by Summit Place Company when it had the map recorded.

The cases cited by appellee in the motion do not aid in determining the question at issue. The instrument indorsed on the map does not state that the sidewalk space and the private parking space constitute parts of the street. On the contrary, the statement is made that the private parking lies between the sidewalk and the curbing along the streets. Of course lot 6 could have been made to extend only to the sidewalk, in which case, doubtless, a black line would have been drawn so as to clearly show its boundary, and the front line would have been marked "98" instead of "114." It is also clear that the company could make the lot include the sidewalk space and private parking space, subject to an easement in favor of the public for sidewalk, and restrictions as to the use of the space designated as private parking. When the map and its accompanying deed of dedication are considered together, it clearly appears that Summit Place Company stipulated that lot 6 was 114 feet wide; that such distance was obtained by treating the lot as extending to the street indicated on the map; that the lot was burdened with an easement in favor of the public for sidewalks; and restrictions concerning the use of that part between the sidewalk and curb, imposed for the purpose of enhancing the beauty and symmetry of the addition.

If it could be held that there is such ambiguity as rendered it necessary to resort to circumstances attending the making of the map and its accompanying instrument, the uncontradicted testimony of Walker and Roos as to the plan on which the addition was laid out would resolve the ambiguity against defendant in error's contention. This testimony was not contradicted except in so far as it contained statements to the effect that defendant in error participated in conferences resulting in the formation of the plan for laying out and selling the property. The extent of defendant in error's connection with the company is covered by the trial court's sixth finding of fact, copied in the original opinion. While it is true that Summit Place Company could not convey something it had already parted with, and if the map and deed of dedication showed clearly that lot 6 only had a front of 98 feet, the deed to defendant in error could not change that fact, under the testimony of Walker it appears that a general form of deed was prepared as a part of the plan for laying out and selling the addition, which form was to be used in all conveyances. This being true, the provisions of the deed in evidence cast light on the intent of the company with respect to the map and its accompanying instrument, and, as before pointed out, the deed treats the private parking as part of the lot, for it expressly provides that "no fence or coping shall be erected on any lot outside of the proposed sidewalk."

As defendant in error has failed to prove the falsity of the representation that lot 6 contained 114 feet front on Queensborough Court, he cannot recover, for that is the only representation relied on in his pleading.

Defendant in error's motion for rehearing is overruled.