Louisville and Nashville Railroad Company v. Survant.

---

CASE 32—PETITION ORDINARY—NOVEMBER 1.

# Louisville and Nashville Railroad Company v. Survant.

APPEAL FROM MARION CIRCUIT COURT.

1. WILLFUL NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—In this action against a railroad company to recover damages for personal injuries not resulting in death, it was error to instruct the jury as to willful negligence, as that degree of negligence has no place in the law of this State except in actions resulting in death; and in such actions contributory negligence can not be relied on as a defense.   But as the court in this case gave an instruction to the jury giving defendant the benefit of its plea of contributory negligence, the instruction as to willful negligence was not prejudicial.

2. RAILROAD TRAINS ARE NOT REQUIRED TO SLOW UP AND SIGNAL AT PRIVATE CROSSINGS along the road; it is only where the way is a public one that reckless speed or the failure to signal amounts to neglect upon the part of the railroad company.

3. To CONSTITUTE A PUBLIC CROSSING within the meaning of this rule, the way in question must have been established as a public road in the manner prescribed by statute, or must have been dedicated to the public, and that dedication accepted by the county court, either upon its records or by the continued use and recognition of the ground as a highway, for such a length of time as would imply an acceptance.

In this case the statement of witnesses that the road in question was a public road and as to the length of time it had been used as such should have been excluded from the jury on defendant's motion.

Louisville and Nashville Railroad Company v. Survant.

4. Failure to Give Signal.—Conceding that the failure of defendant to give a signal of the train's approach to a station was negligence as to plaintiff at a private crossing at which the signal could have been heard if it had been given, that negligence does not make the defendant liable to plaintiff for injuries caused by the frightening of her horse by the train after she had made the crossing in safety.

5. Excessive Verdict.—As plaintiff's injuries appear to have been slight, no bones being broken and no permanent injury shown, a verdict of six thousand dollars is excessive.

W. J. LISLE, THOMPSON & McCHORD and H. W. BRUCE for APPELLANT.

1. The appellee having lived at a railroad station, the law holds her to know the danger attending the running of railroad trains, and in attempting to travel on a road which encroaches upon appellant's right of way she is held to assume the ordinary risk of such use of the track.  (L. & N. R. Co. v. Schmetzer, 94 Ky., 424.)

2. In the absence of any record that the road had been taken charge of by the county court, and of any proof that the road was generally and extensively used by the public, it can not be considered such a crossing as required appellant to give signals of the approach of its trains, and the court erred in admitting testimony to show that the road had been traveled by the public for a series of years.  (L., C. & L. R. Co. v. Goetz, 79 Ky., 447; Hutcher v. Ky. Cen. R. Co. 7 Ky. L. R., 761; Eskridges Ex'rs v. C., N. O. & T. P. R. Co., 89 Ky., 374; L. & N. R. Co. v. Schuster, 10 Ky. L R., 65; Gen. Stat., chap. 94, sec. 23, p. 1123; Wilkins v. Barnes, 79 Ky., 323; Greenup Co. v. Maysville & B. S. R. Co., 14 Ky. L. R., 476; Wright v. C., N. O. & T. P. R. Co., 14 Ky. L. R., 788; Conyers v. Scott, 14 Ky. L. R., 784; Bowman v. Wickliffe, 15 B. M., 99.)

3. The law does not require the speed of the train slackened on approaching a crossing at a public highway.  (N. N. & M. V. Co. v. Howard, 14 Ky. L. R., 476.)

4. This is not a case in which punitive damages may be given, but the excessive verdict of $6,000 shows that such damages were given, and the verdict should therefore be reversed.  (Chiles v. Drake, 2 Met., 151; Day v. Woodsworth, 13 (U. S.) Howard, 371.)

5. The instruction as to the law of willful negligence was erroneously given since that degree of negligence has no place in the law of this State except in actions for injuries resulting in the loss of life.  (Maysville & Lex. R. Co. v. Herrick. 13 Bush, 127; L. & N. R. Co. v. Long and wife, 15 Ky. L. R., 199; L. & N. R. Co. v. McCoy, 81 Ky., 413.)

6. As appellee's injuries were shown to be slight and not of a permanent character, and no bones being broken, the verdict of $6,000 was excessive.  (L. S R. Co. v. Mougue, 12 Ky. L. R , 579.)

Louisville and Nashville Railroad Company v. Survant.

7. Appellee failed to use proper care in ascertaining the approach of the train, and but for her negligence the mishap would not have occurred, and, therefore, the negligence of the appellant is immaterial. (Pierce on Railroads, 323, 343.)

W. E. & S. A. RUSSELL AND W. H. HOLT FOR APPELLEES.

1. Under the proof shown, the appellant was guilty of willful negligence in running its train at an exceedingly high rate of speed across the highway, and in failing to give the necessary signal when approaching the crossing. (Heddles v. The Chicago & Northwestern R. Co, 20 Am. State Rep., 106.)

2. The road having been generally and constantly used by the public for a period of 25 or 30 years, it will be considered a county road without proof that it was formally laid out and accepted by the county court, and without the record that it was under the charge of the court, and, therefore, was such a highway as required a signal to be given of an approaching train. (L. & N. R. Co. v. Boarman, 13 Ky. L. R. 355; Chicago, &c, R. Co. v. Dillon, 5 Amer. State Rep., 559; Quigley v. Deleware, &c., Canal Co, 24 Amer. State Rep., 504; Cahill v. C., N. O. & T. P. R. Co., 13 Ky. L. R., 714; Wright v. C., N. O. & T. P. R. Co., 14 Ky. L. R., 788; Byrne v. New York Cen. R. Co., 58 Am. State Rep., 512; Barry v. N. Y. Cen. R. Co., 44 Amer. Rep., 377; Adams v. Iron Cliffs Co., 18 Am. State Rep., 441; Blodget v. Royalton, 42 Amer. Dec., 476; Webber v. Chapman, 80 Amer. Dec., 111; Reed v. Northfield, 23 Amer. Dec., 662; State v. Hunter, 44 Amer. Dec., 41; Valentine v Boston, 33 Amer. Dec, 711.)

3. Appellee having sustained injuries which wrecked her nervous system and permanently destroyed her health by reason of the willful negligence of the appellant, the case is one which warrants punitive damages, and a verdict for $6,000 is not excessive and can not be set aside as the result of passion and prejudice. (Duncan v. Finnyhorn, Sneed, 262; Taylor v. Giger, Hard., 586; Worford v. Isabell, 1 Bibb, 248; North v, Oates, 2 Bibb, 591; Bacon v. Brown, 4 Bibb, 92; Craig v. Elliott, 4 Bibb. 272; Webber v. Kenny, 1 Marshall, 346; Riley v. Nugent, 1 Marshall, 431; Respass v. Parmer, 2 Marshall, 365; Bell v. Howard, 4 Littell, 118; Singleton v. Singleton, 8 Dana, 320; Kountz v. Brown, 16 B. M. 587; Letton v. Young, 2 Met., 122; L. & N. R. Co. v. Fox, 11 Bush, 503; Wardles v. The Railroad Co., 35 La. Ann., 202; Marion v. The Railroad Co., 64 Iowa, 568; Macon R. Co. v. Winn, 26 Ga., 250; Chicago, &c., R. Co. v. Herz, 87 Ill., 541; Schmidt v. R. Co., 23 Wis., 186; 99 Amer. Dec., 158; Draper v. Baker, 61 Wis., 450; Harold v. R. Co., 13 Daly, 378; Funston v. R. Co., 61 Iowa, 452; Ill. Cen. R. Co. v. Parks, 88 Ill., 373; Deppe v. R. Co., 38 Iowa, 592; Campbell v. Portland Co., 62 Me., 552; Union Pacific R. Co. v. Young, 19 Kans, 488; Ketchum v.

Louisville and Nashville Railroad Company v. Survant.

R. Co., 38 La. Ann.. 777; Robinson v. R Co., 48 Cal., 409; Atchison,. &c., R. Co. v. Moore, 31 Kans., 197; Carthage Turnpike Co. vs. Andrews, 102 Ind., 188; Berg v. R. Co, 50 Wis., 419; Woodbury v. District of Columbia, 5 Mackey, 127; Solen v. R. Co., 13 Nev, 106; Barksdull v. R. Co., 23 La. Ann., 180; Schultz v. R. Co., 46 N. Y.. Sup. Ct., 211; Groves v. Rochester, 39 Hun., 5; Chicago, &c., R. Co. v. Holland, 18 Ill. App., 418; Alberti v. R. Co., 43 Hun., 421; K. C. R. Co˙ v. McMurtry, 3 Ky. L. R., 625; L. & N. R. Co. vs. Mitchell,. 10 Ky. L. R., 211.)

4. Appellee having taken the care to stop before reaching the railroad track to listen for the train, and, upon failing to hear it, having driven on, she can not be charged with negligence. (Ernst v. Hudson R. Co., 90 Amer. Dec., 761; Chicago & R. I. R. Co. v. Still, 71 Amer. Dec., 236; Thayer v. St. Louis, &c., R. Co., 85 Amer. Dec., 409; Baltimore, &c., R. Co. v. Breing, 90 Amer Dec., 49; Beisiegel v. N. Y. Cen. R. Co., 90 Amer. Dec.,741; Baltimore, &c., R. Co. v. State, 96 Amer. Dec, 528; Pittsburg, &c, R. Co. v. Collins, 83 American Rep., 371.)

CHIEF JUSTICE QUIGLEY DELIVERED THE OPINION OF THE COURT.

This suit was brought to recover damages for personal injuries to the plaintiff, Jennie Survant, and for damage to a buggy, alleged to have been caused by the negligence of defendant in running a freight train upon a crossing over which at the time said plaintiff and her two children were passing in a buggy, whereby the mare hitched thereto was frightened and ran away, running the buggy against a telegraph pole and throwing plaintiff and her children out upon the ground, the plaintiff falling upon her shoulder. Defendant denies all negligence upon its part, and pleads. contributory negligence on the part of plaintiff. Defendant also alleges in its answer that the crossing where the accident occurred was a private crossing, which is denied by plaintiffs in their reply, and the fact as to whether or not the road she was traveling at the time of the accident and the crossing was a public or private road, or a public or private crossing, is in.

Louisville and Nashville Railroad Company v. Survant.

issue.  Upon the trial of the case the jury found a verdict for plaintiff for six thousand dollars.

Defendant's motion for a new trial having been overruled, it prosecutes this appeal to reverse the judgment of the lower court and have a new trial granted, and assigns the following reasons therefor: First. The damages are excessive, appearing to have been given under the influence of passion or prejudice.  Second. The verdict is not sustained by sufficient evidence and is contrary to law.  Third. Error in the court in giving to the jury instructions A, B and C; and fourth, error in the court in permitting improper testimony to go to the jury.  We find no error in instructions A and B, but instruction C is clearly improper, and should not have been given.  It reads as follows: " Willful negligence is an intentional failure to perform a known or manifest duty in which the public has an interest, or which was important to plaintiff in avoiding the injury to her if she sustained any injury."  Such an instruction is proper only under the statute in cases where death ensues from the willful negligence of another, and in which punitive damages may be awarded, and in such actions contributory neglect cannot be relied upon as a defense. In all other cases, contributory negligence may be pleaded as a defense.

But in this case this instruction was not prejudicial to defendant, the court, at defendant's instance, having instructed the jury as to contributory negligence on the part of plaintiff.  The other reasons assigned grow out of and are based entirely upon the evidence. So that, for the purposes of this appeal, it is necessary only to consider the facts.

It appears from the evidence that Northfork and Gravel Switch are two railroad stations on the Knoxville branch of defendant's road in Marion county, Kentucky, about one mile apart. There are two roads from Northfork to Gravel Switch—one by the old pike or county road, the other over the land of Al. Pipes. The distance between the stations by the county road is about three miles, and by the Pipes road about one mile. The railroad does not cross the county road between these stations, nor does it appear that there is a public crossing of the said road at Northfork; but about midway between them, on the Pipes road, there is a railroad crossing. Between Northfork and this crossing, on the Pipes road, there are three or four gates, and before this road reaches the crossing, it runs parallel with the railroad track for three or four hundred yards and within about that distance of it. After the road gets to the crossing it runs the balance of the way over the right of way of defendant, and parallel with its track, to Gravel Switch. On the Pipes road, beginning at a point about three hundred yards from the crossing and up to within a hundred yards thereof, a traveler thereover can not be seen by the engineer of a train approaching the crossing from Northfork, because of a cut in defendant's road-bed; but from the crossing and at any point within a hundred yards thereof on the Pipes road, the view of the track towards Northfork is unobstructed for seven or eight hundred yards; from thence on to the station it makes several curves and runs through two or three cuts. From Northfork to Gravel Switch the track is down grade. At the time of the accident, plaintiff

lived in Northfork, and was familiar with the running of trains over defendant's road between these stations, as well as with defendant's track and road-bed, and the crossing where the accident occurred, and knew which one of the two roads could best be traveled with safety and convenience. There is no evidence that the county road was out of repair and unfit for travel, and the evidence being silent on that point, we assume that it was in good repair. On the 11th day of December, 1892, between one and two o'clock in the afternoon, plaintiff, Jennie Survant, with her two children, . the eldest being a lad fourteen years of age, started in a buggy drawn by a mare, from Northfork to Gravel Switch over the Pipes road, to visit a relative. The day was cold, but the buggy top was thrown back. After they had passed through all the gates, with the exception perhaps of the last one, and were upon that part of the road running parallel with the track and at a distance of about three hundred yards from the crossing, she stopped and looked and listened to ascertain whether or not a train was approaching, and not seeing or hearing any, and without further effort on her part so to do before reaching the crossing, the buggy was driven upon it, and then, for the first time, she saw a train rapidly approaching from the direction of Northfork and within a short distance of her. The alarm whistle was sounded, the crossing was made, but the mare got frightened and ran away, causing the buggy to strike a telegraph pole, thereby throwing its occupants out.

The train was a through freight containing about twenty cars loaded with coal. It was running be-

tween twenty and thirty miles an hour, the usual speed of such trains between these stations, because of the down grade and the grade to be climbed. There is no evidence that the mare was frightened before the crossing was reached or after she got upon it, but rather that she got frightened after the crossing was made, and while she was on this parallel road over the defendant's right of way. Nor does the evidence indicate that after the perilous condition of plaintiff was discovered by the engineer in charge of said train, he or any of the other employes thereon did that which they should not have done, or omitted to do that which they ought to have done within the line of their duty to avert the danger, if any, to the plaintiff.

The contention of appellees that the Pipes road was a public road and the crossing thereover a public crossing is not sustained by the evidence. It was never created a public road by the county court, or dedicated as such by any of the owners of the land over which it passes. The county court of Marion county never at any time exercised in any way the least control over it. Pipes, the owner of the land, states that the road is a private passway; that he bought and paid for the land over which it runs and pays taxes upon it.

A public road can only be established in two ways. One is in the manner prescribed by the statute, the other by dedication; and in the latter case it must be accepted by the county court. In the case of Wilkins v. Barnes, 79 Ky., 323, this court said: "Both a dedication and an acceptance must concur. The former

may be made by deed, or result from such use and lapse of time as would constitute a right in an individual by prescription."

And again: "A road or street dedicated to the public must be *accepted* by the county court or town, either upon their records or by the continued use and recognition of the ground as a highway for such a length of time as would imply an acceptance. The continued use of a road by the public for fifteen years or more, with the *exercise* of power on the part of the county court over it by appointing overseers, &c., would constitute it a highway." (See also Gedge, &c., v. Commonwealth, 9 Bush, 64.)

This is not the case here. Besides, it is not in keeping with the intelligence and common sense of any community to assume that the people or the county court would either construct, maintain or accept as a public road, a road only a mile in length, one-half of it being upon the land of an individual and the other half upon the right of way of defendant's railroad and parallel with its track, over which freight and passenger trains were being operated daily.

No dedication of said road, or acceptance thereof by the county court, having been shown, or right by prescription in the public to use the same as a public road, all that portion of the testimony of witnesses who testified that the road was a public road and the length of time it had been used as such, and to which the defendant objected, should have been excluded from the jury on defendant's motion so to do. So that, this court holding as it does under the evidence, that the crossing where the accident occurred

was a private crossing, the question is, whether or not defendant was negligent in the running of its train along and over said crossing at the time and in the manner complained of.   We find this language in Shearman and Redfield on Negligence, third edition, section 478:

"Frequent attempts have been made to convict railroad companies of negligence on the mere ground of the speed at which their trains have been run.   But it never has been, and we trust never will be, established as a rule of law, that any conceivable rate of speed is, *per se*, evidence of negligence.   The whole object of the railroad system is to attain a high speed of travel; and the vast saving of time which the community makes by every increase in the rapidity of travel, with the corresponding increase in the productive power of nations, should make courts and juries cautious, lest they hinder the progress of the world by an unwise timidity.   If the track is decayed or loosely laid, a high rate of speed is, no doubt, dangerous. There are many railroads upon which it would be more dangerous to travel thirty miles an hour than to move at double the speed over a well built and equipped road.   So when the road passes through a village, town or city, the speed of its trains should obviously be diminished in proportion to the liability of meeting persons on the track.   But in crossing an ordinary rural highway no diminution of speed is required unless very special circumstances make it necessary."

And again, in section 481: "An engineer is not bound to lower his speed on approaching the ordi-

nary highways in the country where travelers only pass occasionally."

And this court, in the case of Hucker's Adm'r v. K. C. R. Co., 7 Ky. Law Rep., 761, held "that railroads are not required to slow up and signal at all points along their road where people are in the habit of crossing; that it is only where the way is a public one that reckless speed or the failure to signal amounts to neglect upon the part of the railroad company."

And in the case of Shackleford's Administrator v. L. & N. R. Co., 84 Ky. 43: "Railroad trains must give the customary signals at public places or public crossings. The failure so to do is negligence. But this is required for the safety of passengers, train men and the public using, and who have the right to use, the track at such public ways, and not for the purpose of protecting those who, as trespassers, may be crossing or using the track elsewhere."

Appellees, however, contend that it was the duty of the engineer to sound the whistle and signal the approach of the train to Northfork, and by failure so to do she was not apprised of its coming at Pipes' crossing. Granting this to be true, and that under the evidence she had a right to rely upon and expect such signals to be given, because the proof conduces to show that she was not in fact a trespasser, but by implied permission and license of the company had the right to use the crossing and the road as a neighborhood road, yet this case differs in principle from the case of Cahill v. Cincinnati, &c., Railway Company, reported in 92 Ky., 345, in this: That in the Cahill case the injury was caused by the

railroad company, and in this case it was caused by the fright of plaintiff's mare after the crossing had been made, and after plaintiff had voluntarily placed herself in a position of danger, from which the use of ordinary care and prudence of the defendant's employes in charge of said train could not relieve her. The plaintiff states that she was looking out for trains, as it was about time for the passenger train, and if it had been the passenger she would have had time to have gotten to Gravel Switch.

While negligence, contributory negligence, and the question as to whether or not after the discovery of the danger, the defendant used ordinary care and prudence to prevent the injury, are questions of fact for the jury, yet they are all predicated upon the idea that before the plaintiff can recover, there must be evidence of some positive, actual negligence on the part of defendant, and but for which the injury would not have happened, which is not established under the evidence in this case.

Finally, as to the verdict of the jury. Plaintiff's injuries appear to have been slight; no bones were broken, and no permanent injury shown. This court, in the case of Louisville Southern R. Co. v. Minogue, 90 Ky., 369, held the verdict excessive, because it was not shown with reasonable certainty that there was permanent injury, the medical testimony being as unsatisfactory in that case as in the one before us.

Wherefore the judgment of the lower court is reversed, with directions to grant defendant a new trial.