PROYOSTY, J.
Some time in 1884 or 1S85 the defendant railroad company fenced its right of way in the town of Morgan City, and in doing so left no opening at the place which on the map of the town appears to be Fourth street. Later, at a date not fixed in the record, it established a turnstile opening in the fence for the accommodation of pedestrians, and made a gravel path across the right of way. Seventeen or 18 years after-wards—in 1902—the present mandamus suit is filed to compel the defendant company to remove the fence and “maintain the said crossing.” The suit is instituted under -the provisions of Act No. 133, p. 191, of 1888, by which any five taxpayers have a standing in court to compel corporations to fulfill their obligations, whether contractual or merely legal, towards municipalties with reference to the paving, grading, etc., of streets, crossings, etc.
The defense is that the right of way was granted before Morgan City was established, when the present site of the city was a plantation; and that neither by contract nor otherwise has the defendant lost its right to fence its right of way at the place in question.
To what extent Fourth street had at the time of the erection of the fence, or has since, developed into a well-defined street, is not testified to, and is not otherwise shown by the record. We infer that in 1885 the place was not a built-up part of the town. In their effort to establish that the crossing had more than a mere map existence the relators show that in driving cattle from the town to a certain bridge near by,-or from this bridge to the town, it was customary to cross the railroad at this place; but that it was not a road for vehicles, though empty carts might be taken across by putting planks over the ditches on each side of the roadbed.
The first contention of the relator is that, as an effect of the laying off of the locality into squares and streets and the selling of lots by reference to a plat showing streets, and this Fourth street in particular, this street or crossing became dedicated to the public, and the defendant lost its right to fence it. In support' of this contention relator cites the decisions of this court in the cases of Land v. Smith, 44 La. Ann. 931, 11 South. 577; Leland University v. City, 47 La. Ann. 100, 16 South. 653; Lafitte v. City, 52 La. Ann. 2099, 28 South. 327; Armistead v. Vicksburg, 47 La. Ann. 1381, 17 South. 888. These decisions would be applicable if the right of way had been granted subsequent to the laying off of the town, but the reverse happens to be the case. The right of way was granted in 1853, and the town was laid off some time in 1856 or 1857. Evidently, after the owners of the soil had granted this right of way, and divested themselves of their dominion over it, they no longer could impose a servitude of passage upon it. They could not do so any more by dedication than by sale. The owner of a plantation traversed by a railroad cannot impose servitudes of passage upon the right of way of the railroad by simply laying off the abutting land on each side into town lots and streets.
• The next reliance of the relator is upon a contract entered into between the defendant company and the municipal authorities, by which the defendant acquired the right to lay a switch track upon Union and Front streets, and bound itself to grade and level Union street, and further stipulated as follows: “It is further understood that all the crossings of streets over the tracks of the said railroad company are to be made and maintained in good order by said company.”
This stipulation, the relator contends, has reference to all the crossings traversed by defendant’s road throughout the city, and not merely to the crossings of Union and Front streets, and therefore embraces this Fourth street crossing, although not one of the crossings of Union or Fourth streets.
This contention is well founded if the stipulation is taken at the foot of the letter; “au pied de la lettre,” or “literally;” *123 for the word “all” can have bnt one meaning. But neither under the rules laid down in the Code for the interpretation of contracts nor under the evidence can this literal meaning be adopted. Indeed, if the stipulation is to be accepted literally, the street crossings of other cities along the road are also included, for they are “crossings of streets over the tracks of the said railroad company,” and, if “all” such crossings are included, why, they necessarily are also included. But the Code warns us against applying general expressions in contracts, such as the one here in question, beyond the subject-matter in connection with which they are used. “Art. 1959. However general be the terms in which a contract is couched, it extends only to the things concerning which it appears that the parties intended to contract.” The sole reason why this stipulation is inapplicable to streets crossed by defendant’s road in other cities is that it was not inserted in the contract in connection with them, and for the same reason it is not applicable to any crossings of Morgan City other than those of Union and Front streets. These two streets alone were to be affected by the switch track concerning which the parties were dealing.
To the same conclusion is the evidence in the ease, which shows that the intention of the parties did not go beyond the particular streets to be affected by the switch track, of which Fourth street was not one. Furthermore, the evidence shows that this contract was superseded as a whole by a subsequent contract, and so abrogated.
Next relator insists that “under its own charter, and under the charter and ordinances of the town of Morgan City, and under its duty to society, the said company is bound to preserve and care for Fourth street over which its cars pass.”
The provision of defendant’s charter here referred to is paragraph 7, § 5, by which the defendant is authorized and empowered to construct and maintain its railroad, and to have the right of way therefor across or along any waters, water courses, streets, etc., within the state of Louisiana, with the proviso that it “shall preserve any water course, street, highway, turnpike or canal which said railway may so pass on, along or intersect, touch or cross, so as not to impair its usefulness to the public unnecessarily, or if' temporarily, in and during the construction of the said railroad, the said company shall restore the same to its former state, or to-such state that its usefulness and convenience to the public shall not be unnecessarily impaired or injured.”
Manifestly, this section of the charter refers only to streets already in existence at the time of the construction of the road. It cannot have been meant to operate as an agreement on the part of the defendant company to hold its right of way subject to-any servitude of passage future'Legislatures, municipal authorities, or individuals might choose to impose upon it by establishing-roads or streets across it. Whether it lies within the power of the Legislature to impose-such a servitude upon railroads without compensation previously made, quaere? But the Legislature of this state has not undertaken to do so, and municipalities and individuals plainly cannot. Railroad Co. v. Mayor, 48 La. Ann. 1102, 20 South. 664.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this suit be dismissed, at the cost of the relator in both courts.