# East Cairo Ferry Company v. Brown.

(Decided March 4, 1930.)

HENRY F. TURNER for appellant.

M. C. ANDERSON for appellee.

Opinion of the Court by Commissioner Hobson—Reversing.

The East Cairo Ferry Company was incorporated and began business in September, 1929. It operates a ferry across the Mississippi river between Cairo, Ill., and East Cairo, Ky. Several miles south of East Cairo on the Mississippi is Filmore. Several miles below Filmore is Wickliffe, Kentucky. At least 90 per cent. of the ferry company's business comes to it from Wickliffe, over a road leading down the river from East Cairo to Filmore and from there to Wickliffe. On November 26, 1929, it brought this action against appellee, J. F. Brown, to enjoin him from placing a fence, gate, or other obstruction across the road referred to, alleging that it was a public road. On the filing of the petition, without any notice to Brown, a temporary restraining order was made by the clerk as prayed in the petition. Thus things stood until December 24, 1929, when a written agreement was filed that the parties would make up the issues at the January term and submit the case to the court on oral testimony to be heard in lieu of depositions. The motion of the plaintiff for a temporary injunction and the motion of the defendant to dissolve the temporary restraining order were passed until that time. The defendant filed his answer on January 10, 1930. The plaintiff filed its reply on January 11. The affirmative allegations of the reply were controverted of record; proof was heard, and, the case being submitted, on January 17 the court entered judgment dismissing the plaintiff's petition with cost and setting aside the temporary restraining order; but as the plaintiff desired to make application to this court for a revision of the judgment refusing to grant plaintiff an injunction and dissolving the temporary restraining order issued by the clerk, it was ordered that the judgment should not take effect for twenty days after it was rendered. The plaintiff filed a copy of the record in this court on February 6, and entered a motion to revise the order of the Ballard circuit court and to make an order continuing in force the restraining order. This motion was overruled on the authority of Matthews v. Rogers, 107 Ky. 236, 53 S. W. 413, 21 Ky. Law Rep. 905. Upon joint motion of both parties the case was advanced and submitted upon the merits.

It is well settled that an individual may bring an action to abate a public nuisance, when he has sustained or will sustain damages of a special character therefrom,

distinctly different from the injuries suffered by the public generally. 20 R. C. L. p. 460 and cases cited. As the plaintiffs are conducting a public ferry and their business depends upon this road being kept open, and as 90 per cent. of the business comes over this road, clearly it suffers an injury distinct from that suffered by the general public. Illinois C. R. R. v. Covington, 211 Ky. 825, 278 S. W. 109; Alsip v. Hodge, 214 Ky. 438, 283 S. W. 392.

Many years ago a public road was duly established leading from Wickliffe up the river to Filmore and thence to East Cairo. This road crossed Willow creek, not far from Wickliffe, and then turned to the left and went westwardly to the bank of the Mississippi river, and thence up the river and close to the bank of Filmore. The river washed into the bank at this point, and some years ago they changed the road so as to turn to the east after crossing Willow creek; thence up the creek a short distance on the right of way of the Mobile & Ohio Railroad and then west to the east bank of the Mississippi river, and thence up the river as before to Filmore. Some years after this a washout occurred in the road in the tract of land then owned by E. O. Meacham. The county judge then went out to the road and had the county working force to lay out a road and grade it around the washout through Meacham's corn field. The judge marked off where they were to make the road, with corn stalks. The hands made the roads as directed by the judge; Meacham, who lived in Paducah, came to see about it, but, after some conferences with the county judge, in which the judge seems to have convinced him that he was not much hurt, as any other arrangement would probably damage him more, he went back to Paducah and acquiesced in what the county judge had done. The public continued to use the cut-off through Meacham's land, and the county hands continued to keep it in order. A year or so after this, and in this condition of things, Brown bought the tract of land from Meacham, and at the time this action was brought was asserting a right to fence up this cut off.

Above the Brown tract is a small tract known in the record as the Harris tract. The road as originally laid out over the Harris tract, some years ago, all fell in the river. The public, as the ground fell in the river, moved back on the land and made a new road there. This continued from time to time until probably the road had

moved back a quarter of a mile and the Harris land was a long strip along the river, from forty to seventy-five feet wide. In this condition of things, a few years ago, another washout took place, rendering the road impassible through the Harris tract. R. I. Birney, who was operating a ferry at East Cairo, then went out to the Harris land under a contract with Harris and cut a new road, through a thicket, at two places, a hundred or two hundred feet long in all and at his own expense worked this road for a while, but only allowed the patrons of his ferry to go over it. There was another ferry operating at East Cairo in opposition to him. After Birney had opened this road and used it as long as he was in business, he sold out to appellant, and appellant then made a similar contract with Harris for the use of this line of road. The county had had the road worked several times since Birney opened it and has treated this part of the road just as it has treated the rest of it from Wickliffe to East Cairo. Brown was asserting a right to stop up these two openings.

Appellant earnestly insists that the road from Wickliffe to East Cairo is a public highway, and that Brown should be enjoined from putting up the obstructions above referred to; but to constitute a public highway, as has been often held, there must not only be a mere use by the public of the way, but there must be some acceptance of the dedication of the way by the county before it becomes a public highway. Gedge v. Com., 9 Bush, 61; Wilkins v. Barnes, 79 Ky. 323 and Louisville & N. R. R. v. Survant, 96 Ky. 197, 27 S. W. 999, 16 Ky. Law Rep. 545. The county can only speak through its constituted authorities, the county court or the fiscal court. No action was taken by either of them.

Appellant relies earnestly upon McDonald v. Powell County, 199 Ky. 300, 250 S. W. 1007; Black Mountain Corporation v. Houston, 211 Ky. 621, 277 S. W. 993. But in those cases the fiscal court had taken the land and built the road. The landowners sued for damages, and it was simply held that, as the fiscal court had taken his land, he had a right to recover compensation for the taking of his property. The cases go no further than this. Appellant also relies on Muhlenberg County v. Ray, 215 Ky. 295, 284 S. W. 1074; Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501; Metcalfe v. Lyttle, 218 Ky. 188, 293, S. W. 979, and Terhune v. Gorham, 225 Ky. 249, 8 S. W. (2d) 431; Id., 229 Ky. 229, 16 S. W. (2d) 1060; but in all

these cases the land had been taken by the state highway commission under the statute, which made the county liable for the right of way, and the owners were simply suing under the statute to recover pay for the taking of their land. None of these cases are to any extent in conflict with the line of cases holding that a road does not become a public highway until accepted by the county authorities. The county judge has no authority to accept a road, and neither have the hands that are sent out to work on the roads. There was therefore no acceptance by the county of a dedication of this land as a public highway. Though it was not a public highway, Brown had no right to obstruct it unless he had some title to the land. He bought the land from Meacham after the county judge had laid off the road and worked it, and Meacham had acquiesced in this. The county was in the open and notorious possession of the land, and, so far as the road went, Brown took the land with the road open upon it. Carrollton Telephone Co. v. Spicer, 177 Ky. 340, 197 S. W. 827, L. R. A. 1918A, 950. Not only so; in an action against him the land was sold under an order entered at the April term, 1929. The sale was confirmed at the August term, 1929, and at the September term, 1929, the land was duly conveyed to the purchaser. The possession of land goes with the deed. Kentucky Statutes, sec. 491. Travis v. Bruce, 172 Ky. 390, 189 S. W. 939; Wiser v. Shacklett, 208 Ky. 317, 270 S. W. 754. It is said in the brief that the court provided in its judgment that Brown should remain in possession until December 31. But this is not in the record, and, as the answer was not filed until January 10, would be entirely immaterial; for plainly Brown, after the 1st of January, had no legal or equitable interest in this land and no right to place any obstructions of any kind upon it.

As to the Harris land, the facts are these: On August 24, 1926, W. A. Berryman, who then owned the Harris tract, made a lease for five years to Brown of "all of the cleared land on what is known as the Meacham land," and Brown agreed to cultivate the said land in a husband-like manner and give to Berryman one-third of the proceeds. After this Berryman sold to Harris, and Harris had notice of the lease to Brown. But clearly under the lease Brown only took all the cleared land, and he bound himself "to cultivate all the land, unless prevented by overflows of the river." Under this lease Brown took no interest in the traveled highway that was

then used by the public. The evidence in fact shows that there was no arable land on this Harris tract. The arable land was all on the remainder of the Berryman tract. Brown never understood his covenant with Berryman to require him to cultivate the roadway; for although he had possession after 1926, he in fact never made any effort to use it in this way, and plainly Berryman did not intend to give him any such right. The court therefore is clearly of the opinion that Brown has no right of any kind in this part of the road and no right to put any obstruction on it in any way. The plaintiffs have a right to use the road under their written lease from Harris, and have a right to complain if Brown, who was without any right to do so, undertakes to stop up the road.

As Brown was without right to put up either of the obstructions, and would be simply a trespasser in so doing, the court should have granted the injunction as prayed.

Judgment reversed, and cause remanded for judgment as above indicated.