Grandison McLEAN, Alfred McEwen, William McGoodwin and Billy L. Thompson, Appellants,

v.

George B. THURMAN and Lida F. Thurman, Appellees.

Court of Appeals of Kentucky.

Dec. 17, 1954.

826

· B. L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Paul Mansfield, Lexington, for appellants.

F. Selby Hurst, Moloney, Moloney & Hurst, Lexington, for appellees.

SIMS, Justice.

This suit was brought by appellants for a declaration of rights with respect to certain deed restrictions and to enjoin appellees from permitting the use of their lot in a residential subdivision as a public passway. On motion for summary judgment made by appellees, the Chancellor denied the relief sought.

The first question presented arises upon appellees' motion to dismiss the appeal because a sufficient jurisdictional amount is not shown by the record. In view of its importance to the profession, we deem it proper to set forth in this opinion our reasons for denying this motion.

Insofar as pertinent here, KRS 21.060, prior to 1952, permitted parties to take an appeal to this court, as a matter of right, from all judgments in civil cases *except* "(a) Judgments *for the recovery of money or personal property*, or any interest therein, or to enforce any lien thereon, where the value in controversy is less than five hundred dollars, exclusive of interest and costs * * *." (Our italics.) Subsection (2) provided: "If the value of the amount or thing in controversy, exclusive of interest and costs, is as much as two hundred dollars, the Court of Appeals may grant an appeal from the judgment or final order of a circuit court * * *."

Prior to 1952, in actions to obtain injunctive relief, an appeal could be prosecuted regardless of the amount involved. Burnside Supply Co. v. Burnside Graded Common School, 260 Ky. 482, 86 S.W.2d 160; Commonwealth v. Burnett, 274 Ky. 231, 118 S.W.2d 558.

As amended in 1952, this statute granted the same general right of appeal, but the exception in subsection (a) was changed to read: "Judgments *where the value of the amount or thing in controversy* is less than twenty-five hundred dollars, exclusive of interest and costs; * * *." (Our italics.) Subsection (2) remained unchanged.

· KRS 21.080 was amended so as to increase the amount which would require a motion for appeal from $500 to $2500.

On their face the amendments to KRS 21.060 and 21.080, considered together with KRS 21.070 (which has been effective since 1914), appeared to make a *monetary valuation* of the matter involved in the controversy the criterion for determining: (1) if a party could take an appeal under any circumstances, and (2) if a party must file a motion for appeal in this court.

The question is immediately presented as to whether or not a monetary valuation of the amount or thing, to the extent of $200, must be shown by the record in every kind of action before this court has jurisdiction of the appeal.

■ The principal purpose of the amendment seems to have been to place real property in the same category as personal property. The requirement of a monetary valuation would presuppose that the rights asserted reasonably could be asserted in those terms. It seems clear that in certain types of cases the thing in controversy may not be reducible to or translatable into a monetary valuation. For example, cases involving the custody of a child, certain contempt proceedings, actions in the nature of mandamus and prohibition, and others, have since time immemorial been appealable, though the rights involved could not be stated in monetary terms.

The present action seeks a declaration of rights concerning the applicability of restrictions and covenants relating to real estate and also seeks to enjoin the defendants from using their property so as to impair the rights of appellants. It is alleged that the plaintiffs have suffered and will suffer irreparable damage. From the very nature of the controversy it is obvious that the rights involved are distinct from the tangible property of appellants and appellees and that such rights cannot be measured in dollars and cents.

■■ We do not think the legislature, in amending the statute, intended to deny appeals in those actions in which the amount or thing in controversy is not translatable into a monetary valuation and may be said to transcend such valuation. See 4 C.J.S.,

Appeal and Error, § 56. We therefore construe the statute as not requiring a jurisdictional amount to be shown by the record in a case of this nature. To the extent that Brashear v. Payne, Ky., 1954, 266 S.W.2d 346, is in conflict with this conclusion, it is overruled.

■ It may be pointed out that declaratory judgment or injunction procedure may not be invoked to circumvent the requirement that a sufficient jurisdictional amount be shown where the actual amount or thing in controversy is of such a tangible nature that its valuation reasonably may be shown. See Newton v. Citizens' Bank of Shelbyville, 251 Ky. 790, 66 S.W.2d 7; Charos v. Jent, 293 Ky. 50, 168 S.W.2d 334.

■ We may say in passing that if the amount or thing in controversy is translatable into a monetary valuation, the burden is upon the appellant to have the record show that the required jurisdictional amount is involved. See Mullins v. Hall, Ky., 1954, 273 S.W.2d 831. If necessary KRS 21.070 may be invoked for this purpose. The motion to dismiss the appeal is denied.

Appellants are the owners of residential lots in Blue Ridge Acres subdivision in Fayette County near Lexington. Appellee Thurman (to whom we will hereafter refer as "appellee") was developing an adjacent subdivision known as Dreamland. South Ridge Drive in Dreamland came to a deadend at the rear of lot 3, block D of the Blue Ridge Acres subdivision, which lot fronts on Blue Ridge Drive in the latter subdivision. Appellee purchased this lot prior to recording his plat of Dreamland. His apparent purpose was to dedicate a portion of it as a public street so that there would be a convenient entrance from Blue Ridge Acres subdivision to his Dreamland subdivision. An attempted dedication of a part of this lot for such purpose was made by him, and it is this use appellants seek to enjoin.

It appears from the facts shown on the motion for summary judgment that the original owner of the Blue Ridge Acres

subdivision intended its use for residential purposes only and that it had adequate streets. The plat of this subdivision was recorded in 1945. As shown by one of the deeds to a lot in this subdivision, the use was restricted to residential purposes. In addition, the original owner by affidavit stated that one of the planned attractive features of this subdivision would be the lack of through traffic. It is the contention of appellants that appellee has devoted his lot to a restricted use prohibited by the restrictions.

While appellants argue extensively in their brief the question of whether or not notice of restrictions on appellee's lot was brought home to him, it appears to us from the court's opinion and judgment and appellee's brief that notice was not the issue upon which this case was or should be decided. It is appellee's contention that assuming he had notice of possible limitations upon the use of this lot, actually no legally recognizable restrictions had been imposed upon it. Let us examine the fact situation.

A deed to appellant McLean from the original owner of Blue Ridge Acres subdivision, executed and recorded prior to appellee's purchase, contained the following provisions:

"The foregoing grant is expressly subject to the following covenants and restrictions, * * * and the said Grantee in consideration of the agreement of the Grantor to insert the same covenants and restrictions in all contracts and deeds covering all lots in the above described subdivision, together with such additional restrictions in particular cases as he may deem advisable to more effectually preserve said lands for private residence purposes, which agreement on the part of the Grantor is a material consideration to the Grantee in accepting this contract, hereby covenants and agrees with the Grantor in order to assist the said Grantor in carrying out and maintaining his general plan for the sale and development of said subdivision

and the preservation of the general character of the neighborhood as follows:

"First. No building shall be erected or altered or used on any lot in said subdivision (except as herein stipulated) for any purpose whatsoever other than:

"(a) One single residence with garage attached, either to the main body of the residence, or by a porch or by a breezeway—dwelling to be occupied by the Grantee, or his lessee, and for residence purposes only.

"* * * * * *

"Second. The purpose of these restrictions are (is) to limit the use and occupancy of any one lot to a single family and their necessary servants.

"* * * * * *

"Ninth. Altering Size of Lots— No lot shall be subdivided or in any respect be reduced in size by any method whatsoever."

Similar provisions appeared in a recorded contract for the sale of property to one of appellee's grantors. This contract was specifically referred to in the deed to appellee by deed book and page number, but appellee's deed was one of general warranty and it contained no such restrictions.

Appellee takes the position that no restrictions were imposed upon his lot because they were not set forth in a recordable instrument in his chain of title. His argument is that (1) the contract which was in his chain of title was *not a recordable instrument* because not acknowledged (even though it was recorded), and (2) the recorded deed of one of the appellants was *not in his chain of title*.

Though it was stated in Holliday v. Sphar, 262 Ky. 45, 89 S.W.2d 327, that restrictive covenants may only be established by a "recordable instrument", if the question was decisive we would hesitate to say that the sale contract, which was recorded and which was properly recordable

if it had been acknowledged, would not have been sufficient to subject the lot to the restrictions involved. The language used in the Sphar case was in refutation of the argument that the *oral representations* of the vendor could create restrictions.

Assuming, however, that restrictions were not imposed by the recorded contract in appellee's chain of title, it is apparent that they were imposed by the deed of one of the appellants who had purchased a neighboring lot in the subdivision prior to the conveyance to appellee.

■ This other deed was not in appellee's chain of title, but we are aware of no rule that a restrictive covenant of this nature must meet such requirement. As a matter of principle, the covenant of the original vendor of both parties that he would "insert the same covenants and restrictions in all contracts and deeds covering all lots in the * * * subdivision" thereby created in appellant McLean what has been termed a "restrictive negative easement" in the other lots in the subdivision, including appellee's. McLean's right to enforce the restriction was not created by appellee's deed nor need it have been created in appellee's chain of title. Of course this right would not have been enforceable against appellee if he had not been put on notice that there were restrictions upon his lot limiting it to residential purposes only, but in the present case appellee did have such notice, both actual and constructive.

■ The "chain of title" argument seems to have been disposed of in Harp v. Parker, 278 Ky. 78, 128 S.W.2d 211. There it was held that a restriction may be imposed on one piece of property by the covenants in a deed to another piece of property, even though the latter deed is not in the former's chain of title. In that case appears a quotation from Tiffany on Real Property to the effect that where a common grantor creates by deed an easement in other property owned by him, the subsequent purchaser of the other property takes it subject to such easement if he has notice of such easement.

The rule is particularly applicable to property which is subdivided for residential purposes. The governing principle involved is thus stated in 14 Am.Jur., Covenants, Conditions and Restrictions, Section 199, as follows:

"Where the owner of two or more lots situated near one another conveys one of the lots with express building restrictions applying thereto in favor of the land retained by the grantor, the servitude becomes mutual, and during the period of restraint, the owner of the lots retained may do nothing that is forbidden to the owner of the lot sold. * * * Such a restriction is said to create a reciprocal negative easement, which is enforceable against the grantor or a subsequent purchaser of the lot from him with notice, actual or constructive."

■ In ascertaining whether a restrictive condition in a deed is inserted for the benefit of the grantor alone or is for the benefit of common grantees (and those who take under them), the intention of the parties is ascertained from the deed itself in the light of surrounding circumstances. Anderson v. Henslee, 226 Ky. 465, 11 S.W.2d 154. For a full discussion of this question in cases similar to the one at bar, see McQuade v. Wilcox, 215 Mich. 302, 183 N.W. 771, 16 A.L.R. 997, and the dissenting opinion in Buckley v. Mooney, 339 Mich. 398, 63 N.W.2d 655. It is plainly evident from the language we have quoted from appellant McLean's deed that it was the intention of the parties that these restrictions were to be binding upon all lots in Blue Ridge Acres subdivision, including appellee's.

■ We therefore are forced to the conclusion that even if the restrictions on appellee's lot were not created or made effective by the recorded contract in his chain of title, they were imposed by the deed to appellant McLean. Under the allegations of the petition, since this matter was disposed of on a motion for summary judgment, we must assume that the other

appellants and those they represent had similar recorded deeds creating restrictive easements in appellee's lot and would consequently be entitled to the same relief.

The next serious question in the case is whether or not the restrictions imposed upon appellee's lot preclude him from the use of the land in the manner shown. Appellee refers us to several cases from other jurisdictions wherein it was held a conveyance of property to a governmental unit to be used for a public purpose was not subject to restrictions applicable to private persons. The basis of these decisions seems to have been that a restriction preventing a public use would either be contrary to public policy or would defeat the right of eminent domain. These reasons do not appear to us sound. A reasonable restriction may further, rather than oppose, public policy, and of course no restriction is superior to the right of eminent domain. The question was settled in Kentucky in Ashland-Boyd County City-County Health Dept., v. Riggs, Ky., 1952, 252 S.W.2d 922. In that case we said, 252 S.W.2d at page 924:

"The point of exemption of a governmental agency does not seem to have been hitherto raised in this court. However, we are among the jurisdictions which adhere to the concept that such restrictions constitute mutual, reciprocal, equitable easements of the nature of servitudes in favor of owners of other lots of a plot of which all were once a part; that they constitute property rights which run with the land so as to entitle beneficiaries or the owners to enforce the restrictions, and if it be inequitable to have injunctive relief, to recover damages. Crutcher v. Moffett, 205 Ky. 444, 266 S.W. 6; Starck v. Foley, 209 Ky. 332, 272 S.W. 890, 41 A.L.R. 756; Doll v. Moise, 214 Ky. 123, 282 S.W. 763; Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910, 61 A.L.R. 453.

"We, therefore, hold that the state and its subdivisions of government are

bound by restrictions of this character the same as a private person, subject, however, to the exercise of power of eminent domain."

It follows that if the original grantor had conveyed appellee's lot to Fayette County the latter would have been bound by the restrictions (subject to the right of eminent domain). It is therefore evident that appellee may not accomplish by indirection what could not have been done directly.

Though the question was not raised in the briefs, we have considered whether or not the restrictions could be so construed as to authorize a public passway use as within the meaning of residential purposes. In view of the plan of this subdivision as shown by the recorded plat, and in view of the wording of the restrictions (including the one forbidding the reduction in the size of a lot by any method whatsoever), we are of the opinion that the proposed use runs counter to the restrictions.

The final issue in the case is whether or not the attempted dedication of a portion of appellee's lot created a public street which the Chancellor could not in effect close by granting the injunction requested by appellants. There are several difficulties with appellee's position on this point. In the first place, it does not appear from the record that the Commonwealth or Fayette County is willing to accept this offer of dedication. Secondly, there is a question as to whether or not a public need for this street exists. See East Cairo Ferry Co. v. Brown, 233 Ky. 299, 25 S.W.2d 730. Finally, we cannot comprehend on what legal or logical basis the purported dedication could be held to extinguish the restrictions. While it may be true that the attempted dedication by appellee may be irrevocable as between him and the Commonwealth, or Fayette County, or the public generally, which we do not decide, appellee's relinquishment of an interest in a portion of his lot certainly cannot have the positive effect of destroying appellants' rights therein.

A search of the authorities reveals no case involving an attempted dedication of another's property right in the nature of a reciprocal negative or equitable easement. The rule has been generally stated that the owner of a servient tenement cannot impair an easement by a dedication. 16 Am.Jur., Dedication, Section 10. This rule is supported by Ogle v. Philadelphia, W. & B. Ry. Co., 3 Houst., Del., 302; City of Sarcoxie v. Wild, 64 Mo.App. 403; Inhabitants of South Berwick v. York County Commissioners, 98 Me. 108, 56 A. 623; City of Detroit v. Detroit & Milwaukee Railroad Co., 23 Mich. 173; State ex rel. Ditch v. Morgan's Louisiana & T. R. & S. S. Co., 111 La. 120, 35 So. 482.

In City of Detroit v. Detroit & Milwaukee Railroad Co., 23 Mich. 173, the owner who granted a right of way to a railroad was held precluded from dedicating the land as a street. In Inhabitants of South Berwick v. York County Commissioners, 98 Me. 108, 56 A. 623, a grant of land (with the right to erect a gate thereon) conveyed the land subject to a servitude and precluded a dedication by the grantee.

■ Generally, no one except the owner of an unlimited estate in fee can make a dedication of land. Givens v. Commonwealth, Ky., 1951, 244 S.W.2d 740; 26 C.J.S., Dedication, § 7, p. 53. It would seem to follow from the requirement of unencumbered ownership that the power to dedicate can rise no higher than the power of disposition, and since we have determined appellee's lot is subject to restrictions for the benefit of appellants, the latters' property rights cannot be extinguished by the attempted dedication.

It is unnecessary for us to consider the applicability of such cases as Klapproth v. Grininger, 162 Minn. 488, 203 N.W. 418, 39 A.L.R. 1080, and Starmount Co. v. Greensboro Memorial Park, Inc., 233 N.C. 613, 65 S.W.2d 134, 25 A.L.R.2d 898, relied upon by appellants, although they strongly support the conclusion we have reached.

We are of the opinion the Chancellor erroneously adjudged that there were no restrictions on the use of appellee's lot. Nor do we believe the Chancellor should have granted judgment for appellee on the basis of a defect in parties, since this objection is not a proper ground for summary judgment. See Cowling v. Deep Vein Coal Co., 7 Cir., 183 F.2d 652; State of Maryland, to Use of Carson v. Acme Poultry Corp., D.C., 9 F.R.D. 687; U. S. v. Costa (Holland Furnace Co.), D.C., 11 F.R.D. 492; Moore's Federal Practice, Vol. 6, Section 56.03, Page 2026.

The judgment is reversed for proceedings consistent with this opinion.