ARMIGER ET UX. *v.* LEWIN ET AL.

[No. 227, September Term, 1957.]

*Decided April 29, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and MACGILL, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*John B. Garvey, Jr.,* for appellants.

*Edmund P. Dandridge, Jr.,* for appellee, John Henry Lewin.

*William E. Hammond,* with whom were *Francis T. Peach, Walter R. Haile* and *Richard C. Murray* on the brief, for appellee, Baltimore County, Maryland.

HORNEY, J., delivered the opinion of the Court.

John Henry Lewin (Lewin) is the owner of an eight acre tract of land fronting on Malvern Avenue in Ruxton. John Warfield Armiger and Jean Stark Armiger, his wife (the Armigers), own a one acre lot bordering on Lewin's eastern boundary. The titles to both properties were derived from the same source, Grace Ward Levering (the common grantor), who had formerly owned both parcels of land. The

common grantor conveyed the larger tract to Lewin in 1942. In 1948 the Armigers acquired the smaller lot from other parties who had received a deed therefor from the common grantor. When Lewin acquired title to his land, there was a driveway along the eastern boundary thereof running from his residence to Malvern Avenue. This driveway has always been used by the occupants of the house on the Armiger lot. The use was formally created by the terms of a reservation in the deed from the common grantor to Lewin, which provides, in part, that:

> "The party of the first part [Grace Ward Levering] hereby reserves for herself, and for her heirs and assigns of a parcel of land * * * wholly covered by a brick building, which parcel of land [now owned by the Armigers] is located adjacent to the easternmost side of the premises hereby conveyed [now owned by Lewin] and is part of a larger parcel of land designated as Lot No. 6 on the * * * plat made a part hereof * * *, for so long a period as * * * [the] brick building, or any dwelling replacing the same, shall be continued to be used only as a single family dwelling, *right of way, for the purpose of affording ingress and egress to and from * * * [the] brick building * * *, over that portion of a drive-way located on the premises hereby conveyed * * * and which extends from said Malvern Avenue to a place where a branch of said drive-way * * * enters * * * Lot No. 6 immediately opposite the * * * brick building.*" (Emphasis added.)

The deed also contained a covenant for joint maintenance of the driveway referred to therein. A plat showing the complete subdivision of all the land of the common grantor in the vicinity was recorded simultaneously with the deed. The plat clearly outlined the private way in controversy.

Lewin had made plans which have been approved by the proper authorities of Baltimore County for a small development of his land which would subdivide his entire tract into seven lots, two of which constitute his residence, adjacent

gardens, and lawn, and five of which are lots he contemplates selling for home building purposes. The approved plans call for a three-foot widening of that portion of the existing driveway nearest Malvern Avenue and its use by the purchasers of the five lots to be sold. The plans, necessarily, contemplate the continued use by the Armigers of the whole of their right of way for ingress and egress to and from their lot to Malvern Avenue, although that portion of the right of way which is to be widened will become a public street by virtue of a dedication thereof to Baltimore County.

The Armigers filed a bill against Lewin and Baltimore County for a declaratory decree construing their rights, status, and other legal relations with respect to the right of way, and for an injunction to enjoin its contemplated dedication. Subsequently, they moved for summary judgment on the ground that there was no genuine dispute as to any material fact. Both Lewin and the County filed demurrers, which were sustained by the chancellor. The Armigers appealed from a final decree dismissing the bill of complaint after the motion for summary judgment had been denied and the demurrers had been sustained.

The sole question presented is whether the owner of a servient estate may dedicate to public use that portion of his land over which the owners of a dominant tenement have a right of way. The Armigers insist that their easement will be destroyed by the proposed dedication, but Lewin and the County contend that the dedication will be subject to the Armigers' rights of ingress and egress. The Armigers assert that only an owner with an "unencumbered" fee simple title can dedicate his land, but Lewin urges that he can make any use of his land which will not unreasonably interfere with the right of passage of the Armigers to and from their land.

The authorities are all but silent on the question which confronts us in this case. In the sections on dedication in 11 *McQuillin, Municipal Corporations* (3d ed. 1950), Secs. 33.12-33.21, and 1 *Elliott, Roads and Streets* (4th ed. 1926), Secs. 158-61, there are discussions of "who may dedicate," but there is no mention of the issue in this case. *Tribble v. Dallas Ry. & Terminal Co.*, 13 S. W. 2d 933 (Tex. Civ.

App. 1929), is cited in 26 *C. J. S., Dedication,* Sec. 7, as authority for permitting the owner of a servient tenement to dedicate his land, but no other cases are cited. And the effect of the *Tribble* case is somewhat mitigated, for one reason, by the fact that the plaintiffs were estopped from enjoining the construction of a street car line on the street since they had permitted the public to use it for many years.

The Armigers rely primarily on *City of Sarcoxie v. Wild,* 64 Mo. App. 403 (1896), as authority to reverse the decree of the chancellor. In that case, in which the servient owner had dedicated an easement to the municipality as a public way, the dominant owner refused to countenance the dedication, and deliberately obstructed the way to prevent public use. He was indicted, tried, and convicted. On appeal the intermediate court of appeals held that the deed from the dominant owner reserving an easement vested it in him, and that the owner of the fee held the same subject to the encumbrance.

The *Wild* case was a criminal proceeding, and we are not persuaded that the law therein enunciated is applicable to the facts presented in the instant case. Moreover, it is clear that the four cases relied on by the court in the *Wild* case are not authority for holding that the owner of a servient tenement cannot dedicate his land to the public. In *Kyle v. Town of Logan,* 87 Ill. 64 (1877), the owner of the land had blocked off a road. He was prosecuted on the theory that the road had been dedicated to public use by prior owners. It was held that there had been *in fact* no prior dedication, and therefore the road was not a public one. In *Ward v. Davis,* 3 San. 502 (N. Y. 1850), the owners of land formed an association and appointed directors to manage, improve, and dispose of it. Subsequently, they conveyed the land in fee to trustees. It was held that since the *whole* title was held by the trustees, the directors could not dedicate the land to public use without the consent of the trustees. *City of Hannibal v. Heirs & Admrs. of Draper,* 36 Mo. 332 (1865), involved merely the question of whether a proposed dedication had been accepted by the city. The last case cited in the *Wild* case, *McShane v. City of Moberly,* 79 Mo. 41 (1883),

involved an attempted dedication of a mortgagor of the land conveyed to a mortgagee by a mortgage. Although each of those cases stated that only an owner of an absolute fee can dedicate property, none of them involved a situation where the owner of a fee subject to an easement dedicated his property *subject to the rights of the holder of the easement.*

The case of *McLean v. Thurman,* 273 S. W. 2d 825 (Ky. 1954), also relied on by the Armigers, is not material. This was an action for declaratory and injunctive relief against the use of a lot in a residential subdivision as a public passageway. It was held that the insertion in a deed of one lot by a common grantor, of a use restriction on the whole subdivision and a covenant to insert like covenants and restrictions in the deeds of all other lots, created a "restrictive negative easement" which was operative on the lot conveyed to another grantee so as to restrict the creation of a public passageway by the owner of the latter lot. The Court also held that the attempted dedication as a public way failed because (i) there had been no acceptance of the dedication, (ii) there was a question as to whether or not a public need for the passageway existed, and (iii) the owner of a servient tenement cannot impair by a dedication the easement of all other interested persons. Obviously, the case at bar is distinguishable from the *McLean* case. In the latter case there was an intent on the part of the common grantor to restrict the subdivision to certain uses. In the case now before us there was no intent on the part of the common grantor to restrict the use of the private road to only two property owners. See *Jarman v. Freeman,* 80 N. J. Eq. 81, 83 A. 372 (1912).

The rule stated in 26 C. J. S., *Dedication,* Sec. 6, is that "any person capable of making a grant has capacity to dedicate." Thus, a lessee would not have capacity to make a grant of the demised property and cannot dedicate it. *Asso. of Independent Taxi Operators v. Yellow Cab Co.,* 198 Md. 181, 193, 82 A. 2d 106 (1951). But there is no doubt that the owner of a fee has capacity to make a grant of his land, *subject to a dominant easement.*

On the issue of non-exclusivity of the easement, it was said

in *Stevens v. Bird-Jex Co.,* 81 Utah 355, 18 P. 2d· 292 (1933):

> "Ordinarily the grant of an easement over land does not prevent the owner of the fee from so using it as not to unreasonably interfere with the special use for which the easement was granted. There is nothing in the language of the deed to plaintiffs' grantor to indicate an intention that the grantee was to have the exclusive use of the property over which the easement was granted. * * * He may himself use the way, or permit others to do so, subject to the limitation that his use or the use of his permittee must not be such as to impair the enjoyment of the easement by the owner of the dominant estate, or subject him to extra expense in keeping it in repair * * *."

See also *Imbriaco v. Engel,* 112 N. J. Eq. 253, 163 A. 657 (1933), to the same effect.

Whether or not the easement of the Armigers will be disturbed is an important question. As Judge Raine aptly said in his opinion: "The complainant's argument begs the question by assuming the dedication to public use will necessarily terminate, destroy or impair the property right of the complainant. If this assumption is correct dedication would be prohibited." For example, in *City of Detroit v. Detroit & M. R. R.,* 23 Mich. 173 (1871), the owners of a farm, along the edge of which a railroad company owned the particular estate in a strip of land for its tracks, could not dedicate to the public as a street any portion of the railroad's property. Obviously, the use of the strip as a street would destroy the right of the railroad to operate its trains thereon. Holdings to the same effect were made in *State ex rel. Ditch v. Morgan's La. & T. R. & S. S. Co.,* 111 La. 120, 35 So. 482 (1903), and *Delaware & Hudson Co. v. Olyphant Borough,* 224 Pa. 387, 73 A. 458 (1909). But in the case at bar, both Lewin and the County concede that the easement of the Armigers will not be destroyed by the dedication.

Finally, there is one point not mentioned in the briefs:

conditions may validly be imposed upon a dedication. Thus, there is no reason why Lewin may not—in fact, he should—dedicate the proposed public street, subject to the condition that the Armigers shall be entitled to use it as heretofore. "The dedicator may impose reasonable conditions, restrictions, and limitations, and compliance therewith is essential unless waived. * * * [The donor] may dedicate his land subject to private easements of access, light, and air; * * *." 26 *C. J. S., Dedication*, Sec. 30. See *Wiedmer v. West Jersey & S. R. R.*, 98 N. J. L. 316, 119 A. 776 (1923); *Lynchburg T. & L. Co. v. City of Lynchburg*, 142 Va. 255, 128 S. E. 606 (1925); *State Road Commission v. C. & O. Ry.*, 115 W. Va. 647, 177 S. E. 530 (1934). See also *Buffalo, L. & R. Ry. v. Hoyer*, 214 N. Y. 236, 108 N. E. 455 (1915), in which it is said:

> "It is suggested that the private easements in * * * [the] plot of land * * * are antagonistic to and inconsistent with the claim that the common is, in fact a public park. We do not agree with such claim. Lands may be dedicated to the public for a park subject to private easements of access, light and air. Such private rights or easements given prior to or contemporaneous with the dedication of land as a public park are not so antagonistic to the rights of the public in such lands as to prevent its use for park purposes."

And see 3 *American Law of Property* (1952), Sec. 12.132, which states:

> "[T]he dedicator may in his act of dedication reserve certain interest, such as a private easement of access, light, and air, or he may by imposing conditions, restrictions, and limitations materially limit the character of the interest acquired by the donee."

The County, in accepting the dedication, even in the absence of conditions, restrictions and limitations, necessarily takes the dedicated property subject to all of the existing rights of the Armigers in and to the same. There is also no

doubt that if the County, for any reason, should ever close the street to public use, or abandon it, the rights of the Armigers to continue to use the easement—if it still exists under the terms of the reservation which created it—would remain intact.

We think it is clear that the decree should be affirmed. Since the bill for declaratory relief sought a decree construing the rights, status, and other legal relationships of the parties, the chancellor, by his decree, should have declared that Lewin was entitled to dedicate to Baltimore County the portion of his land over which the Armigers have a right of way, subject to the rights of the Armigers in the easement. Code (1957), Art. 31A, secs. 2, 5 and 6. However, no harm was done by the dismissal since it, in effect, was tantamount to a declaration of the rights, status, and relationships of the parties to this suit.

*Decree affirmed, the appellants to pay the costs.*